Michael V. VOELKER, et al., Plaintiffs,

v.

DELMARVA POWER AND LIGHT COMPANY, et al., Defendants.

DELMARVA POWER AND LIGHT COMPANY, et al., Defendants and Third–Party Plaintiffs,

v.

John HOZIK, et al., Third–Party Defendants.

Civ. A. No. HAR 88–2531.

United States District Court, D. Maryland.

Nov. 6, 1989.

---

## MEMORANDUM OPINION

HARGROVE, District Judge.

Currently pending before this Court is Defendant Delmarva Power and Light Company's ("Delmarva") Motion to Dismiss Count II of Plaintiffs Michael V. Voelker and Merridee A. Voelker ("Voelkers") complaint, Defendant Asplundh Tree Expert Company's ("Asplundh") Motion for Summary Judgment filed July 28, 1989, and third-party Defendants John Hozik and Joan Hozik ("Hoziks") Motion for Summary Judgment filed July 17, 1989. The issues have been fully briefed. A hearing on the motions was held in this Court on October 5, 1989.

## FACTS

On January 1, 1988, ten-year old Andrew D. Voelker, decedent, was electrocuted when he touched an electrical wire while tree climbing with his brother, Joshua Voelker, and their friend, John Hozik, Jr., both age nine, at the home of the Hoziks. Prior to the accident, decedent shouted down from the tree that he saw the electrical wire above him. Decedent was pronounced dead on arrival at Johns Hopkins University Hospital. It is disputed whether the Hoziks knew that the children were tree climbing at the time of the accident. However, there is no evidence to suggest that they saw or even knew that the children were climbing the particular tree in which this tragic accident occurred.

The Voelkers, decedent's parents, brought suit on August 24, 1988, against both Delmarva and Asplundh for negligence. Asplundh was under contract with Delmarva to trim trees along the power lines in the Hoziks' area, including the tree in which decedent was climbing when this accident occurred. Plaintiffs also seek judgment against Delmarva for strict liability due to the claimed ultrahazardous nature of the transmission of electricity.

Both defendants have additionally filed a third-party complaint upon the Hoziks, claiming that the Hoziks were negligent in their supervision of the children and thus responsible for the accident. Delmarva and Asplundh further claim that they were unable to trim the tree in which the decedent was electrocuted due to the objections of the Hoziks.

Jurisdiction is claimed under diversity, 28 U.S.C. Sec. 1332. Accordingly, the Court will apply Maryland substantive law.

I.

Defendant Delmarva has moved to dismiss Count II of the complaint for failure to state a claim for which relief may be granted. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) should not be granted "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, the Court must accept as true all allegations of the complaint and examine them in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ In Count II, plaintiffs seek recovery under a strict liability theory claiming that the transmission of electricity through residential areas through trees is "dangerous and ultrahazardous." An activity is defined as "ultrahazardous" when it is considered "abnormally dangerous." Restatement of Torts, Second, Section 519. Under Maryland law, an "abnormally dangerous activity" for which strict liability is imposed must satisfy the following factors:

    (a) existence of a high degree of risk of some harm to the person, land or chattels of others;

    (b) likelihood that the harm that results from it will be great;

    (c) inability to eliminate the risk by the exercise of reasonable care;

    (d) extent to which the activity is not a matter of common usage;

    (e) inappropriateness of the action;

    (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Kelley v. R.G. Industries, Inc.*, 304 Md. 124, 132–33, 497 A.2d 1143 (1985); *Yommer v. McKenzie*, 255 Md. 220, 224, 257 A.2d 138 (1969); Restatement of Torts, Second, Section 520.

■ While Maryland courts have not yet had the opportunity to apply these factors to the transmission of electricity via high voltage power lines, the issue has been addressed in several other jurisdictions. Without exception, each court considering the issue has rejected any finding of strict or absolute liability for the activity of transmitting electricity. This Court agrees with their analysis.

■ First, it need not be stated that the transmission of electricity is an daily occurrence in every community in the United States. As such, it is a matter of common usage. This will weigh heavily against any finding of an "abnormally dangerous activity." *See New Meadows Holding Co. v. Washington Water Co.*, 34 Wash.App. 25, 659 P.2d 1113 (1983); *Kent v. Gulf States Utilities Co.*, 418 So.2d 493, 498–99 (La. 1982).

Furthermore, to hold utilities to absolute liability by declaring their conduct to be ultrahazardous would be the equivalent of declaring them insurers for all members of the community in which they serve. This Court, along with others which have considered the issue, will not impose that responsibility upon a utility company. *See Nelson by Tatum v. Commonwealth Edison Co.*, 124 Ill.App.3d 655, 80 Ill.Dec. 401, 410–11, 465 N.E.2d 513, 522–23 (1984); *Kent*, at 498–99; *Clinton v. Commonwealth Edison Co.*, 36 Ill.App.3d 1064, 344 N.E.2d 509 (1976); *Kentucky Utilities v. Auto Crane Co.*, 674 S.W.2d 15, 18 (Ky. App.1983).

■ Additionally, the rules of strict liability for abnormally dangerous activities rarely apply to acts carried out in pursuance to a public duty. Restatement of Torts, Second, Section 521. The transmission of electricity by a public utility is a public duty. Therefore, strict liability is inappropriate. *Kentucky Utilities*, at 18. It is also worth noting that in most ultrahazardous activity cases there is no ability to protect oneself. The victim has no connection to the events which lead to his

accident.[1] Here, the decedent came to the hazard. It was not imposed upon him. The facts of this case do not fall within those of the traditional ultrahazardous activity case.

Finally, this Court finds that it is possible to eliminate the risks accompanying the transmission of electricity through the exercise of reasonable care. As stated, electricity is transmitted across power lines constantly. However, the number of injuries which result from this activity are very small. Injuries caused by contact with electrical wires are usually the result of negligence on the part of either the power company, the victim, or a third-party. Injuries do not generally occur because of the nature of the activity itself. *See Kent,* at 498–99. As such, claims arising out of this unfortunate accident are better suited for resolution through traditional negligence claims.

■ Plaintiffs try to distinguish this case from those of other jurisdictions by stating that the hazardous activity undertaken by Delmarva was not the transmission of electricity, but instead was the transmission of electricity via overhead power lines which were concealed by tree branches. *See* Plaintiff's Complaint at 6. However, this is not the actual activity in which Delmarva participated. Delmarva did not place the power lines in a concealed location. The tree in question allegedly grew over the power line at a later date. Whether Delmarva allowed this to happen and whether allowing this to happen was proper, is better addressed in a negligence claim, not in a claim for strict liability. Accordingly, the Court grants Delmarva's Motion to Dismiss Count II of the complaint.[2]

## II.

■ Next this Court considers Asplundh's Motion for Summary Judgment on the complaint. Summary judgment will be granted when "there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The mere existence of a "scintilla of evidence" is not enough to frustrate a motion for summary judgment. The pleadings must show evidence from which the finder of fact could reasonably find for the party opposing judgment. *Id.,* 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Asplundh states that it cannot be held liable for the decedent's accident as a matter of law, claiming that under Maryland law it owed no duty to decedent under its contract with Delmarva. It further claims that even if it did owe a duty to the decedent, it did not breach its contract with Delmarva and therefore cannot be held negligent for actions in connection with the contract. Asplundh thus claims that summary judgment is proper in this case.

1. For a survey of cases in which courts find liability under an ultrahazardous activity theory, *see* W. Prosser, Torts, Section 78 (4th ed. 1971).

2. Claim II is based solely upon a theory of ultrahazardous activity. However, both parties additionally argued in their respective briefs and at the hearing whether strict liability can be grounded in a products liability theory, Restatement of Torts, Section 402A. Maryland adopted section 402A in *Phipps v. General Motors Corp.,* 278 Md. 337, 340–52, 363 A.2d 955 (1976). The Court does not formally address this issue as a products liability action is not stated in the complaint. However, the Court notes that a properly pleaded action based upon products liability would likely be dismissed as the product, electricity, was still in control of Delmarva, and as such had not entered the stream of commerce. *See, Smith v. Home Light & Power Co.,* 734 P.2d 1051, 1085 (Colo.1987); *Wood v. Public Service Co.,* 114 N.H. 182, 317 A.2d 576 (1974); *Kemp v. Wisconsin Power Co.,* 44 Wis.2d 571, 172 N.W.2d 161, 166 (1969); *Schriner v. Pennsylvania Power & Light Co.,* 348 Pa.Super. 177, 501 A.2d 1128 (1985); *Aversa v. Public Service Electric & Gas Co.,* 186 N.J.Super. 130, 451 A.2d 976, 979 (1982); *Williams v. Detroit Power Co.,* 63 Mich.App. 559, 234 N.W.2d 702 (1975); *Genaust v. Illinois Power Co.,* 23 Ill. App.3d 1023, 320 N.E.2d 412 (1974) *aff'd,* 62 Ill.2d 456, 343 N.E.2d 465 (1976). The only case cited by plaintiff to support a claim based upon products liability was subsequently reversed. *Houston Lighting & Power Co. v. Reynolds,* 712 S.W.2d 761 (Tex.Cir.App.1986), *rev'd,* 765 S.W.2d 784 (Tex.1988).

In September, 1981, Asplundh won a contract to serve as tree-trimmers for Delmarva. This same contract was in effect through the time of decedent's accident. Among the areas which Asplundh maintained trees for Delmarva was the area in which the Hoziks lived, Kent Island. Asplundh trimmed areas in approximately two-year cycles. The last time previous to the accident that Asplundh trimmed in the Kent Island area was in early 1986. There is a factual dispute whether Asplundh sought the Hoziks' permission in 1986 to trim the tree in the yard from which decedent fell. However, it is undisputed that Delmarva's supervising foreman at the scene, Victor Williamson, made a determination that the tree in question did not need to be trimmed during that cycle.[3] A new trimming cycle began in the Kent Island area soon after the accident.

■ Plaintiffs claim that Asplundh owed a duty to decedent to keep the tree trimmed for his and the public's safety. Any such duty must necessarily arise out of the contractual relationship between Delmarva and Asplundh. However, a close examination of the contract clearly shows its sole purpose is to help maintain the power lines through which Delmarva transmits electricity to its customers by keeping tree limbs and shrubbery away from the wires. The invitation to make bids for the contract stated that:

> Proposals are hereby requested on a cost-plus basis for trimming and removing trees, mowing and chemically treating brush on distribution and transmission right-of-way; herbicide treating substations and storage yards; mowing grass, pruning, watering and chemically treating shrubbery and removing trash at substations and offices of the Souther Division of Delmarva Power and Light Company.

Defendant Asplundh's Exhibit 1, at 3. The contract itself specifies that:

> Only those trees which are a threat to Owner's [Delmarva] primary conductors shall receive extensive trimming, including dead-wooding, or removal. Trees threatening secondary or service conductors shall be trimmed only to the extent necessary for providing reliable service (18–36 inches). Trees outside Owner's R/W [right of way] and not considered danger trees shall not be trimmed or removed.

Asplundh's Exhibit 1, at 11. The contract is obviously for the maintenance of Delmarva's property and the wiring. There is no mention of trimming for the purpose of maintaining public safety anywhere in the contract or in the invitation to make bids. While trimming tree limbs might be of incidental benefit to the public, it is not an intended purpose of the contract.

Plaintiffs point to a provision of the contract which places a duty upon Asplundh to remove or trim trees in which a tree-house or other sign of children playing is found to support their claim that a duty was owed to their decedent son. Plaintiff Voelkers' Exhibit 14, at 11. However, there was no tree-house on the Hoziks' property at the time of the accident. Furthermore, there is no indication from the pleadings that there were any signs that children played in the tree when Asplundh last trimmed it in 1986. In fact, deposition testimony of Joshua Voelker indicates that children had only climbed this particular tree on two other occasions and that occurred after the last trimming cycle. Asplundh's Exhibit 4, Deposition of Joshua Lee Voelker at 8–10. There could not have been any "signs" that children played in the tree in 1986. Therefore, Asplundh was not required to trim the tree under this provision of the contract and no duty to the decedent arose from this clause. To hold otherwise would make Asplundh potentially liable for any accident involving a child climbing a tree which it is contractually obligated to cut.

Plaintiffs point to the deposition testimony of Robert Collier and James Kelkowski, two Asplundh employees to support further their contention that public safety is a main purpose of trimming. The testimony of Mr. Collier, Vice–President of Asplundh

---

**3.** As will be discussed more fully in Part III, Delmarva had the unconditional right to trim the tree in order to maintain its power lines under an easement.

in charge of overall operations for the Delmarva Peninsula, is not so conclusive. When asked about the purpose of trimming, he said that it was to "[c]lear [limbs] for the conductors.... Utility line clearance." He agreed that the lines are kept clear for the safety of the public, but he did not state how clearance accomplishes this. Plaintiff's Exhibit 9, Deposition of Robert Collier at 174. In light of the contract, it appears that the public is protected not by keeping trees away from power lines, but instead by ensuring that the lines are not knocked down to the ground in an area where the public might be.

Mr. Kelkowski did state specifically in his testimony that the trees are trimmed "so people, you know, like kids, you know, won't get up in the trees, you know, and get, you know, hurt." Plaintiff's Exhibit 8, Deposition of James Kelkowski at 68. However, the Court is given no basis to support this opinion. At issue is the purposes and responsibilities of Asplundh under the contract. The Court finds that the opinion of the contract's purpose as voiced by Mr. Kelkowski is not supported by anything contained in the contract itself nor in any documentation between Asplundh and Delmarva. Accordingly, the testimony of Collier and Kelkowski does not produce sufficient evidence to question the plain purpose of the contract.

■ Since protection of the public is not a main purpose of the contract between Delmarva and Asplundh, it is clear that Plaintiffs cannot support their contention that decedent is a third-party beneficiary under the contract. Under Maryland law, a third-party plaintiff must allege and prove that the primary purpose of the contract was to bestow a benefit upon him:

> [I]t must be shown that the contract was intended for his benefit; and, in order for a third-party beneficiary to recover for a breach of contract it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise. An incidental beneficiary acquires by virtue of the promise no right against the promissor or the promisee.

*Marlboro Shirt Co. v. American District Telegraph Co.*, 196 Md. 565, 569, 77 A.2d 776 (1951). The Voelkers have not met this burden.

The strict privity requirement recently was loosened by the Maryland Court of Appeals in personal injury cases:

> [A]n inverse correlation exists between the nature of the risk on the one hand, and the relationship of the parties on the other hand. As the magnitude of the risk increases, the requirement of privity is relaxed, thus, justifying the imposition of a duty in favor of a large class of persons where the risk is of death or personal injury. Conversely, as the magnitude of the risk decreases, a closer relationship between the parties must be shown to support a tort duty.

*Jacques v. First National Bank*, 307 Md. 527, 537, 515 A.2d 756 (1986). However, while the requirement of privity has been "relaxed" in third-party beneficiary personal injury cases, it has not been abandoned. Here, decedent was in no way connected to the contract between Asplundh and Delmarva. To place a duty for his safety upon Asplundh would be the equivalent of totally removing the privity requirement. The Court does not believe that this was the intention of the Maryland Court of Appeals in *Jacques*. This Court, therefore, holds that there is no duty owed to decedent under the contract. *See Flow Industries, Inc. v. Fields Construction Co.*, 683 F.Supp. 527, 529 (1988) (J. Motz); *Marlboro, supra; East Coast Freight Lines, Inc. v. Consolidated Gas, Electrict Light & Power Co.*, 187 Md. 385, 402, 50 A.2d 246 (1946); *Carlotta v. T.R. Stark & Associates, Inc.*, 57 Md.App. 467, 470 A.2d 838 (1984). In the absence of such duty, there is no recovery in tort. *Wilmington Trust Co. v. Clark*, 289 Md. 313, 327, 424 A.2d 744 (1981). *See also Ashburn v. Anne Arundel County*, 306 Md. 617, 627, 510 A.2d 1078 (1986) ("negligence is a breach of duty owed to one, and absent that duty, there can be no negligence").

■ Even if there were a duty to decedent under the contract, this Court finds that Plaintiffs still would not prevail.

The record clearly indicates that there was no breach of contract by Asplundh. The claimed breach would be the failure of Defendants to trim the tree on the Hoziks' property in 1986 during the trimming cycle previous to the accident.[4] However, the record clearly indicates that this decision was not made by Asplundh, but instead was made by Delmarva's supervisor on the scene, Victor Williamson. This was in accordance with the general procedure followed by Asplundh and Delmarva. Asplundh's Exhibit 2, Deposition of Victor Williamson, at 47–54, 94–96; Asplundh's Exhibit 3, Deposition of Richard Johnston, at 107–08. Clearly, Delmarva alone made the decision not to trim the trees on the Hoziks' property. Asplundh cannot be held liable under Plaintiffs' claim that it was this lack of trimming which caused decedent's death. This Court finds that Asplundh had no duty to decedent and that it did not breach any contractual obligations to Delmarva from which any negligence claim against it must be based. Accordingly, the Court grants the Motion for Summary Judgment.

### III.

Finally, this Court considers the Hoziks' Motion for Summary Judgment on the cross-complaint filed against them by Delmarva and Asplundh. The cross-complaint alleges that the Hoziks should share in any liability arising from the death of Andrew Voelker, because, in 1986 they failed to give Asplundh and Delmarva permission to trim the tree in which the decedent was electrocuted on January 1, 1988. This argument is meritless. The Hoziks property deed is subject to an unconditional easement for the maintenance of power lines. Under this easement, the power company (Delmarva) has the "exclusive and perpetual right and easement, to errect, locate, relocate, renew, repair, operate and perpetually maintain on, over, under, or across the said ... properties and part thereof."

Delmarva is specifically granted the right to "trim, cut and keep clear any and all trees, limbs, undergrowth and other obstructions along and adjacent [to the power lines] that may ... endanger or interfere with the proper construction, reconstruction, inspection, alteration, repair, operation or maintenance [of the power lines]."

■ It is obvious from this easement that neither Delmarva nor their agents needed any permission from an owner to enter onto a property in order to trim a tree if Delmarva considered trimming to be necessary. It is admirable that Delmarva has a policy of obtaining "permission" from property owners prior to trimming their trees. However, this permission is clearly not needed. It is illusory. Delmarva already had the unconditional right to trim trees.

■ Nor can Delmarva claim that the terms of the easement were altered by the parties. As owner of the easement, Delmarva cannot change its responsibilities under the easement and transfer rights back to the servient estate through an internal policy decision. *Reid v. Washington Gas Light Co.*, 232 Md. 545, 548–49, 194 A.2d 636 (1963). Mutual consent of the parties in writing is needed to alter positions of parties as set by an easement. There is no such mutual consent found here. Accordingly, the Hoziks had no connection to any negligence in the care and trimming of the fatal tree.

■ Delmarva and Asplundh also claim that the Hoziks did not exercise proper care over the decedent at the time of the accident, thus making them responsible for his death. This is likewise incorrect. Andrew was a social invitee at the time of the accident. Under Maryland law, a social guest is considered a licensee by invitation. *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265 (1972). A licensee by invitation takes the property as the owner and the members of the owner's family use

---

4. Plaintiffs also claim that Asplundh breached their contract with Delmarva by improperly trimming the tree in 1984, the last time the tree was trimmed. The Court rejects this argument. There is no possibility that negligent trimming in 1984 could be considered to be the proximate cause of this accident. Even were we to find causation in the 1984 trimming, the decision not to trim in 1986 would be a superceding factor.

them. A host will be liable for physical harm caused to guests by a condition on the premises:

> if, but only if, (1) the host knows of, has reason to know of the condition, and should realize that it involves an unreasonable risk of harm to such guest, and should expect that they will not discover or realize the danger, and (2) the host fails to exercise reasonable care to make the conditions safe, or to warn the guests of the condition and the risk involved, and (3) the guests do not know or have reason to know of the condition and the risk involved.

*Paquin v. McGinnis*, 246 Md. 569, 573–74, 229 A.2d 86 (1967). *See also Bramble, supra; Stevens v. Dovre*, 248 Md. 15, 18, 234 A.2d 596 (1967). Furthermore, no special standard of care is imposed upon the host when the social guest is a child. *Laser v. Wilson*, 58 Md.App. 434, 444–45, 473 A.2d 523. *See also Murphy v. Baltimore Gas and Electric Co.*, 290 Md. 186, 191–94, 428 A.2d 459 (1981) (no increased duty owed to a trespassing child).

It is uncontroverted that the Hoziks did not know that the children were playing in the tree in question, although there is a possibility that they had been informed by their son, John Hozik, Jr., that the children would be climbing trees. Hozik's Exhibit 5, Deposition of Joshua Lee Voelker at 39. Furthermore, no evidence suggests that the Hoziks knew that the power line was involved with the tree in any way, despite the fact that Mrs. Hozik did state that at one time she heard a "hissing" noise coming from the tree after a storm. She did not investigate nor report the noise and it soon disappeared. This alone is not enough to conclude that the Hoziks knew of the wire in the tree. Even if they did know of it, there is undisputed evidence that Andrew became aware of the electrical line in the tree he was climbing about five minutes prior to the accident. *Id.* at 31. He was aware of the dangerous condition. Therefore, under Maryland law, the Hoziks would not be responsible for the actions of decedent, which lead to his death. *Paquin, supra.* Accordingly, this Court finds that the Hoziks' Motion for Summary Judgment should be granted.

For the foregoing reasons, and others stated in open court, Delmarva's Motion to Dismiss Count II of the complaint, Asplundh's Motion for Summary Judgment, and the Hoziks' Motion for Summary Judgment will be granted. It will be so ordered.