### WESTFARM ASSOCIATES LIMITED PARTNERSHIP

v.

### INTERNATIONAL FABRICARE INSTITUTE, et al.

v.

### The WASHINGTON SUBURBAN SANITARY COMMISSION.

No. HM-92-9.

United States District Court, D. Maryland.

July 16, 1993.

---

Jeffrey M. Johnson, Dickstein, Shapiro & Morin, Washington, DC, for plaintiff.

Duane A. Siler, Deborah M. Lodge, Michael N. Romita, Patton, Boggs & Blow, Washington, DC, for defendant.

## MEMORANDUM

HERBERT F. MURRAY, Senior District Judge.

After discovering a hazardous substance in groundwater under its land, the plaintiff, Westfarm Associates L.P. ("Westfarm"), brought this action against the defendant, the International Fabricare Institute ("IFI"). Subsequently, both Westfarm and IFI asserted claims against the Washington Suburban Sanitary Commission ("WSSC"). At two hearings held in open Court, this Court entertained argument from all three parties on a variety of pending motions. Having considered the oral and written arguments of counsel, this Court today will resolve the four pending motions for summary judgment.

## I. STATEMENT OF THE CASE

The standards governing the consideration of motions for summary judgment are well known and need not be reiterated in this opinion. *See Weyerhaeuser Corp. v. Koppers Co., Inc.,* 771 F.Supp. 1406, 1409–10 (D.Md. 1991).

Westfarm owns a number of adjacent parcels of land in Montgomery County, Maryland. Groundwater testing under three of those parcels ("Parcel A," "Allegany," and "Somerset") has revealed concentrations of tetrachloroethylene (also known as perchlo-

roethylene, perc, or "PCE"), a solvent used by IFI in its dry cleaning operations.

IFI occupies land at 12251 Tech Road (the "Tech Road site"), immediately to the northwest of Parcel A; Allegany and Somerset lie to the south-southeast of Parcel A. Both IFI's property and Parcel A abut Tech Road, beneath which runs a sewer line owned and operated by WSSC (the "Tech Road Sewer"). Beginning near the northwest corner of IFI's land, Tech Road runs southeast along IFI's property and Parcel A, then turns to the southwest. Information gathered from monitoring wells in the area indicates that the groundwater under these parcels flows generally to the southeast.

As the nationwide trade association for commercial dry cleaners and launderers, IFI uses PCE in several of the dry cleaning and related operations conducted on its property. Different operations generate different kinds of PCE waste, and IFI employees over the years disposed of those wastes in different ways. First, since 1969 the ordinary dry cleaning operations of IFI or its predecessor, the National Institute of Dry Cleaning, have generated drained spent cartridge filters, "cooked" filter residues, and still residues. Until 1985, IFI disposed of spent filters and cooked filter residue in a dumpster at the Tech Road site, and poured the PCE-laden still residues down the drain. Secondly, the operation of certain solvent recycling equipment and air pollution control equipment has generated so-called "separator water"—liquid containing PCE dissolved in solution. Until 1990, IFI poured its separator water down the drain. Finally, in its research laboratory IFI performs various tests on samples of PCE sent to IFI by its members and others. Until 1992, IFI poured PCE down the drain after completing each of the tests. IFI knows of no use of PCE on its land prior to 1969.

PCE, water, and other liquids poured down the drain at IFI flow through a lateral pipe ("sewer lateral") underground in a straight line to the Tech Road Sewer. As noted above, the groundwater in the area flows generally to the southeast. A videotape examination of the sewer lateral revealed many cracks in its interior. Groundwater slightly southeast of the sewer lateral contains high concentrations of PCE, while groundwater just north of the sewer lateral contains no PCE.

WSSC is an agency of the State of Maryland, created in 1918 and charged with the responsibility for providing water and sewer services to the residents of Montgomery and Prince George's Counties in Maryland. The Tech Road Sewer is part of a network of approximately 4000 miles of sewer pipes owned and operated by WSSC.

IFI's sewer lateral empties into the Tech Road Sewer at a sewer house connection at the sewer's terminal end. The house connection extends 27 feet toward IFI's land, where it links with the sewer lateral. Wastes from the sewer lateral enter the sewer house connection and then flow inside the Tech Road Sewer underneath Tech Road, first to the southeast and then to the southwest.

When it commissioned construction of the Tech Road Sewer in 1969, WSSC called for a design that would allow leakage from the pipe at a rate of 200 gallons per inch diameter, per mile, per day. Additionally, a videotape examination of the Tech Road Sewer revealed cracks in the interior of the pipe. Testing of sediment in the sewer house connection of the Tech Road Sewer revealed concentrations of PCE over 100,000 parts per billion—the highest concentration of PCE found at any of the testing sites in the area.

As a governmental agency, WSSC regulates the discharge of industrial waste into its sewer system. Since the first set of regulations, WSSC has prohibited discharges of "[a]ny noxious or malodorous ... substance ... capable of creating a public nuisance or hazard to life...." 1972 WSSC Regulations § 701.3.4; see also 1983 WSSC Regulations § 702.1 (same language). Most recently, WSSC amended that regulatory language to prohibit discharges of "malodorous or toxic ... substances that ... are capable of creating a public nuisance or hazard to human health or the environment...." 1992 WSSC Regulations § 906.c. Also, beginning in 1983, WSSC imposed limits on discharges of "toxic organics" into the sewers. WSSC recently increased the limit on such discharges

to 2.13 milligrams per liter (mg/1), up from its 1983 level of 0.58 mg/1. 1992 WSSC Regulations, Table 9.1.

Westfarm filed this action in 1992 for relief available under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"), as well as for relief under certain state law claims. After this Court ruled on the motion of IFI to dismiss, *see Westfarm Assoc. L.P. v. International Fabricare Inst.,* 22 Envt'l L.Rep. (Envt'l L.Inst.) 21,350, 1992 WL 315188 (D.Md. May 6, 1992), Westfarm filed its first amended complaint, adding claims regarding the contamination of Allegany and Somerset. Later, IFI filed a third-party complaint against WSSC seeking contribution and indemnification, and Westfarm filed a second amended complaint adding WSSC as a defendant.

Presently pending before this Court are the following four motions: the motion of Westfarm for partial summary judgment on Counts I and III of the second amended complaint against IFI;[1] the motion of WSSC for summary judgment against Westfarm; the motion of WSSC for summary judgment against IFI; and the motion of Westfarm for partial summary judgment on Count I of the second amended complaint against WSSC. Tracking the claims asserted in the second amended complaint, this Court will address the issues raised in those motions.

■ Preliminarily, a procedural issue raised by IFI requires brief attention. Emphasizing that Westfarm filed the second amended complaint after filing the motion for partial summary judgment against it, IFI argues that this Court should deny the mo-

tion as moot. However, Counts I and III of the second amended complaint remain substantially the same between the first and second amended complaints (as they relate to IFI), and no prejudice follows from requiring IFI to respond to the pending motion. Accordingly, this Court will not require the plaintiff to refile its motion against IFI.

## II. COUNT I—CERCLA

In Count I, Westfarm seeks relief under CERCLA. With respect to its motion for partial summary judgment, Westfarm seeks a declaratory judgment regarding the liability of IFI and WSSC for its response costs, leaving the calculation of the amount of recoverable costs for trial. Naturally, the defendants dispute CERCLA liability on several grounds, and WSSC seeks summary judgment on this issue.

■ Congress enacted CERCLA in part to encourage the cleanup of environmental hazards by private individuals, who then may recover the costs of the cleanup from the parties responsible for the hazard. *Nurad, Inc. v. William E. Hooper & Sons Co.,* 966 F.2d 837, 839 (4th Cir.1992). Essentially a "remedial statute designed by Congress to protect and preserve public health and the environment," CERCLA requires this Court "to construe its provisions liberally to avoid frustration of the beneficial legislative purposes." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir.1986). As part of its remedial scheme, CERCLA imposes strict liability on responsible parties. *United States v. Monsanto Co.,* 858 F.2d 160, 167 & n. 11 (4th Cir.1988).

■ Westfarm asserts its claims for response costs pursuant to § 107 of CERCLA, 42 U.S.C. § 9607.[2] In order to recover un-

---

1. Count I seeks relief under § 107 of CERCLA, 42 U.S.C. § 9607, and Count III seeks relief under § 7002 of RCRA, 42 U.S.C. § 6972. Westfarm has abandoned Count II, which sought relief under § 310 of CERCLA, 42 U.S.C. § 9659. Counts IV through VII assert state law claims for negligence, trespass, nuisance, and strict liability, respectively.

2. Section 107 provides as follows:
 **(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date**

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
 **(1)** the owner and operator of a vessel or a facility,
 **(2)** any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 **(3)** any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for trans-

der that section, a plaintiff must show that (1) a release or a threatened release[3] of a hazardous substance (2) from a facility[4] (3) required it to incur response costs necessary and consistent with the national contingency plan ("NCP").[5] Lastly, the defendant must be a 'potentially responsible person,' *i.e.,* it must fall within the scope of at least one of the four subparagraphs of § 107(a). *Weyerhaeuser,* 771 F.Supp. at 1410; *accord White v. County of Newberry,* 985 F.2d 168, 172 (4th Cir.1993). All of the parties agree that PCE is a hazardous substance under CERCLA.[6]

In opposition to the plaintiff's motion, both defendants argue that Westfarm has failed to demonstrate several of the elements listed above, or that genuine issues of material fact preclude summary judgment. Additionally, WSSC asserts the affirmative innocent land-

owner defense. This Court now will turn to a discussion of those arguments.

## A. *Facility*

IFI concedes that the Tech Road site is a facility under CERCLA. In contrast, WSSC argues that Congress intended to shield municipal sewer authorities from potentially enormous liability under CERCLA by excluding publicly owned treatment works ("POTWs") from the statutory definition of facility.

In particular, focusing the parenthetical phrase in the definition of "facility"—"including any pipe into a sewer or publicly owned treatment works"—WSSC first notes that such pipes would be included in the ordinary meaning of "pipe or pipeline." WSSC argues

---

port for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned and operated by another party or entity and containing such hazardous substances, and

 (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

 \* \* \* \* \* \*

 (B) any ... necessary costs of response incurred by any other person consistent with the national contingency plan....

(b) Defenses

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

 \* \* \* \* \* \*

 (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all the relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions....

42 U.S.C. § 9607.

3. Section 101(22) of CERCLA provides:

The term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment....

42 U.S.C. § 9601(22). Section 101(8) of CERCLA provides:

The term "environment" means ... (B) any ... surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States.

42 U.S.C. § 9601(8).

4. Section 101(9) of CERCLA provides:

The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C. § 9601(9).

5. Authorized by § 105 of CERCLA, 42 U.S.C. § 9605, the NCP is set forth at 40 C.F.R. Part 300.

6. For a more thorough discussion of the hazards of PCE, *see International Fabricare Inst. v. United States EPA,* 972 F.2d 384, 395–98 (D.C.Cir.1992) (affirming EPA regulation of PCE as a human carcinogen).

that, by adding the parenthetical phrase, Congress must have intended to include every sort of pipe or pipeline *except* sewers and POTWs.

That argument repeats an argument raised in an earlier motion filed by WSSC, and in an earlier opinion, this Court rejected such a narrow construction of the term "facility." *Westfarm Assoc. L.P. v. International Fabricare Inst.*, Civ. No. HM–92–9, slip op. at 4–9 (Jul. 6, 1993). *Accord 3550 Stevens Creek Assoc. v. Barclays Bank*, 915 F.2d 1355, 1360 n. 10 (9th Cir.1990); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 n. 15 (2nd Cir.1985); *HRW Systems, Inc. v. Washington Gas Light Co.*, 823 F.Supp. 318, 338 (D.Md.1993).

## B. *Release*

In its motion papers, Westfarm proposes a number of PCE wastestreams from the Tech Road site to the environment. Those wastestreams include cracks and joints in the sewer lateral and the Tech Road Sewer, leaks in the dumpster, and cracks in the floor at the Tech Road site. In response, IFI argues that Westfarm has failed to demonstrate conclusively that PCE escaped from the Tech Road site. Additionally, WSSC argues that leakage of PCE from the Tech Road Sewer could not constitute a "release" from that facility within the scope of CERCLA. This Court will consider these arguments in turn.

■ In particular, IFI disputes the evidence of cracks in the sewer lateral. IFI Opposition at 4–5 ("the videotape evidence is insufficient to support an inference that any of the cracks go all the way through the exterior of the pipe"). Additionally, IFI disputes that PCE could have leached from the dumpster. *Id.*, Aff of William E. Fisher, ¶ 8 ("To the best of my knowledge, no dumpster located on IFI's property has ever leaked PCE ..."). Finally, IFI disputes that PCE could have seeped through the floor. *Id.* ¶ 12 ("To the best of my knowledge, no liquid from any PCE spill has ever made its way through the floor ..."). IFI maintains that these disputed facts preclude summary judgment.

Preliminarily, this Court notes that IFI does not argue that the PCE presently contaminating the groundwater beneath Westfarm's property originated anywhere other than the Tech Road site. Instead, IFI argues that Westfarm has failed to pinpoint how and when that PCE arrived in the groundwater.

This Court has heard such arguments before from CERCLA defendants. The plaintiff in *Weyerhaeuser* produced evidence that only the defendant used the hazardous substances found on the property at issue in that case, and also that those substances did not migrate to the property from elsewhere. The defendant countered, arguing that the plaintiff made "no showing as to how or when any release of ... hazardous substances occurred, and without this specific showing, [the plaintiff] has not met its burden of proof with regard to the issue of release." *Weyerhaeuser*, 771 F.Supp. at 1411. The defendant also produced deposition testimony from employees who swore that, to their knowledge, none of the chemicals had leaked into the ground. *See id.* at 1411 n. 4. Holding in the context of a summary judgment motion that a release occurred, this Court rejected the attempt to create factual issues with general denials. *Id.* at 1412–13.

Similarly, in the case at bar, this Court rejects IFI's attempt to raise issues of fact with regard to how and when PCE entered the environment. Undisputed soil and groundwater tests show concentrations of PCE slightly downgradient from the sewer lateral and in the area where the dumpster formerly stood. Mere conjecture that cracks evident in the interior of the sewer lateral might not have allowed PCE to escape, or that, to the knowledge of one IFI employee, PCE never leaked from the dumpster, simply do not create factual issues that require trial. PCE was released from the Tech Road site.

■ WSSC also argues that Westfarm has failed to demonstrate a release of PCE from the Tech Road Sewer. Because the PCE at issue in this case all originated at the Tech Road site, WSSC argues, the only "release" for CERCLA purposes occurred when IFI poured PCE wastes down the drain. Extending CERCLA liability to a passive third

party simply because a hazardous substance travels through its property, WSSC concludes, would expand the reach of that statute impermissibly.

■ However, the case law generally contradicts the argument made by WSSC. Indeed, the Fourth Circuit recently adopted a construction of the term "disposal" that does not require any participation by potentially responsible persons. *Nurad,* 966 F.2d at 844–46. Because the definition of "release" includes disposal, *see* § 101(22) of CERCLA, 42 U.S.C. § 9601(22), the breadth of the latter term translates directly to the former. Accordingly, a "release" under CERCLA does not require active participation by any responsible parties. Finally, because WSSC presents no evidence that PCE did not escape from the Tech Road Sewer into the surrounding environment—indeed, as noted above, the interior of the Tech Road Sewer has many cracks and WSSC intended it to leak—this Court concludes that a release of PCE occurred from the Tech Road Sewer.[7]

## C. *Response Costs*

Although the calculation of the recoverable amount of response costs is reserved for trial, in the context of the present motion Westfarm must demonstrate that at least some of its response costs were necessary and consistent with the NCP. *Weyerhaeuser,* 771 F.Supp. at 1414. Both IFI and WSSC dispute that Westfarm has satisfied that burden.

■ In particular, IFI argues that Westfarm's response costs were not necessary in light of the contents of a letter from the Maryland Department of the Environment ("MDE") dated June 28, 1991, informing Westfarm that MDE would investigate the contamination and require appropriate action. Because MDE would require appropriate action, IFI argues, the plaintiff unnecessarily has expended costs investigating the

source and extent of the contamination. As of this writing, however, two years have passed since that letter and the parties have not indicated to this Court that MDE has required any action of any kind with regard to the groundwater contamination in this case. In any event, state approval is not required for a plaintiff to recover response costs. *Richland–Lexington Airport Dist. v. Atlas Properties, Inc.,* 901 F.2d 1206, 1208 (4th Cir.1990).

■ Additionally, although the defendants do not argue that the plaintiff investigated the contamination excessively, IFI and WSSC argue that the failure to solicit public comment as required by the NCP, *see* 40 C.F.R. § 300.700(c)(3)(i), before conducting its investigation precludes any recovery of those costs. This Court previously has permitted a plaintiff to recover its investigatory costs under CERCLA. *Weyerhaeuser,* 771 F.Supp. at 1414–15; *see also Gache v. Town of Harrison,* 813 F.Supp. 1037, 1046 (S.D.N.Y.1993) ("Courts have held that initial preliminary investigatory and monitoring costs are recoverable irrespective of the recoverability of other response costs or compliance with the requirements of the [NCP]"). In accordance with that precedent, this Court finds no merit in the defendants' public comment argument.

## D. *Causation*

In support of its own motions and in opposition to the plaintiff's motion, WSSC argues that Westfarm has failed to demonstrate that any release of PCE from the Tech Road Sewer caused the incurrence of any response costs. In particular, the case at bar involves two sites—the Tech Road Sewer and the groundwater underneath Westfarm's land—and therefore, WSSC argues, Westfarm must demonstrate that PCE migrated from one site to the other. Without such proof, WSSC concludes, the plaintiff cannot satisfy the element of causation.

---

7. At one point in its papers, WSSC argues that Westfarm has failed to demonstrate that PCE from IFI reached the Tech Road Sewer from the sewer lateral, *see* WSSC Opposition at 10, or that PCE inside the Tech Road Sewer did not come from some other source. *Id.* at 11. However, the extraordinarily high concentration of PCE in

the sewer house connection supports Westfarm's position, and WSSC presents no evidence at all to explain those test results. In the absence of conflicting evidence, this Court takes as established that PCE from IFI travelled through the sewer lateral into the Tech Road Sewer.

■ CERCLA does not require West-farm to prove the element of causation. *Monsanto,* 858 F.2d at 170 n. 17 ("The legislature thus eliminated the element of causation from the plaintiff's liability case") (citing discussion of legislative history in *Shore Realty,* 759 F.2d at 1044). Under § 107(a) of CERCLA, 42 U.S.C. § 9607(a), liability is subject only to the defenses in § 107(b) of CERCLA, 42 U.S.C. § 9607(b), each of which requires the defendant affirmatively to prove the absence of causation. *Monsanto,* 858 F.2d at 170; *see also id.* ("In deleting causation language from section 107(a), we assume as have many other courts that Congress knew of the synergistic and migratory capabilities of leaking chemical waste, and the technological infeasibility of tracing improperly disposed waste to its source").

■ Although it allocates the burden of disproving causation to the defendant, CERCLA uses the word "causes":

[any person, linked in any one of several specified ways, to a facility], from which there is a release, or a threatened release which *causes* the incurrence of response costs, of a hazardous substance, shall be liable . . . .

§ 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4). That language imposes liability for releases, and *also* imposes liability for threatened releases that cause the incurrence of response costs. Therefore, only in the case of threatened releases does it appear that a plaintiff must demonstrate any degree of causation. *City of New York v. Exxon Corp.,* 766 F.Supp. 177, 193 (S.D.N.Y.1991) ("better reading of this phrase is that only a threatened release must cause response costs").

■ In the case at bar, which involves actual releases and not merely threatened releases, the plaintiff has proven that the hazardous substance from the facility is identical to the hazardous substance presently contaminating the groundwater beneath its land. As a potentially responsible person, WSSC bears the burden of disproving the element of causation, through one of the available defenses listed in § 107(b) of CERCLA, 42 U.S.C. § 9607(b).

Addressing WSSC's argument in passing, even if CERCLA required causation in this case, it does not follow that the plaintiff must demonstrate that PCE from the Tech Road Sewer has contaminated the groundwater under its land. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146, 1154 (1st Cir.1989) ("There is nothing in the statute, its legislative history, or the case law, which requires proof that the defendant's hazardous wastes actually have migrated to plaintiff's property, causing contamination of plaintiff's property, before CERCLA liability is triggered"). Rejecting the defense asserted by WSSC in another "two-site" case, the United States District Court for the District of Delaware noted that

the policies underlying section 107 conflict with [the defendant's] demand that [the plaintiff] prove beyond dispute that the contaminants found near [the defendant's land] actually flow from [the defendant's land]. From a technological standpoint, [the plaintiff's] ability to "fingerprint" the leachate in the groundwater as emanating from either [the defendant's land] or [another source of contamination] is exceedingly doubtful. To impose such a requirement might permit the owners and operators of both facilities to avoid financial responsibility for the cleanup, and would thus eviscerate section 107.

*Artesian Water Co. v. New Castle County,* 659 F.Supp. 1269, 1282 (D.Del.1987), *aff'd,* 851 F.2d 643 (3rd Cir.1988).

In another two-site case, the district court adopted the reasoning now submitted to this Court by WSSC; on appeal, however, the United States Court of Appeals for the First Circuit vacated and remanded that decision. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 689 F.Supp. 1223 (D.Mass.1988), *rev'd,* 889 F.2d 1146 (1st Cir.1989). Criticizing the arguments that WSSC now asserts, the appellate court in *Dedham Water Co.* observed that, "[t]o our knowledge, every court that has addressed this issue, with the exception of the district court in the instant case, has held that it is not necessary to prove actual contamination of plaintiff's property by defendant's waste in order to estab-

lish liability under CERCLA." 889 F.2d at 1154.

In *Artesian Water Co.* and *Dedham Water Co.*, both courts held that CERCLA requires a causal link between a release or a threatened release and response costs, expressly rejecting the argument made by WSSC in this case. As noted above, the Fourth Circuit in *Monsanto* rejected the notion that the language of CERCLA requires Westfarm to demonstrate causation at all. Although this Court has noted that CERCLA apparently requires proof of causation in cases of threatened releases, the case at bar involves actual releases of PCE, and so the holding of the Fourth Circuit in *Monsanto* controls.

### E. Innocent Landowner Defense

 In its papers, WSSC seeks the protection of § 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3). That section "sets forth a limited affirmative defense based on the complete absence of causation." *Monsanto*, 858 F.2d at 168. Westfarm disputes that WSSC has satisfied the elements of that defense.

Preliminarily, this Court notes that WSSC—not IFI—designed the Tech Road Sewer to leak. Additionally, IFI did not put the cracks in the interior of the Tech Road Sewer, and WSSC—not IFI—neglected to repair them. Finally, WSSC's representative conceded at his deposition that WSSC expected small industrial customers—like IFI—to pour hazardous substances such as PCE into the sewer. Although the WSSC regulations ban discharges of "malodorous or toxic ... substances," those same regulations allow discharges of toxic organics and other hazardous chemicals.

Moreover, WSSC has failed to demonstrate that PCE from the Tech Road Sewer did not migrate to the groundwater, or that all of the PCE presently contaminating the groundwater underneath Westfarm's land flowed there from IFI's facility. Based on the evidence of record, construed in the light most favorable to WSSC, this Court cannot conclude that releases of PCE from the Tech

Road site caused all of the groundwater contamination at issue, or that WSSC exercised due care with respect to the hazardous substance concerned in light of all of the relevant facts and circumstances, or that WSSC took precautions against the foreseeable acts or omissions of industrial customers like IFI or the foreseeable consequences of those acts or omissions. Without evidence to support its innocent landowner defense, WSSC cannot avoid its liability for response costs under CERCLA.[8]

### F. Contribution

 Although CERCLA does not mandate the imposition of joint and several liability on responsible parties, such liability is allowed in appropriate cases. *Monsanto*, 858 F.2d at 171. Indeed, joint and several liability will control in this case unless the defendants can carry their burden of demonstrating either the existence of distinct environmental harms or a reasonable basis for determining the contribution of each defendant to that harm. *Weyerhaeuser*, 771 F.Supp. at 1416.

 As noted above, IFI has filed a third party complaint against WSSC, seeking contribution under § 113(f) of CERCLA, 42 U.S.C. § 9613(f). Asserting "unclean hands," WSSC argues that IFI may not seek contribution.

 In actions for contribution under CERCLA, this Court has broad discretion to apply a wide variety of factors in order to reach an equitable resolution. *See United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 571–72 (6th Cir.1991) ("the court may consider any factor it deems in the interest of justice in allocating contribution recovery"). In a given action for contribution, therefore, the district court may consider the traditional equitable defenses: *caveat emptor,* estoppel, laches, unclean hands, *et cetera. United States v. Fairchild Indus., Inc.*, 766 F.Supp. 405, 414 (D.Md.1991) (declining to strike equitable defenses at an early stage of the case, the court was "reluctant to in any way limit

8. Because WSSC has failed to satisfy any of the other elements of the defense in § 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3), this Court need

not reach the issue of whether IFI poured PCE into the Tech Road Sewer "in connection with a contractual relationship."

its ability to deal effectively with the problem at hand by eliminating or circumscribing its equitable jurisdiction").[9] Nevertheless, in the context of CERCLA, those doctrines are not defenses to liability but are merely factors for the court to consider. *See Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 89–90 (3rd Cir.1988) ("under CERCLA the doctrine of caveat emptor is not a defense to liability for contribution but may only be considered in mitigation of amount due"). Consequently, the doctrine of unclean hands does not shield WSSC from liability for contribution under CERCLA.

### G. Conclusion

The foregoing discussion makes clear that both IFI and WSSC are liable to Westfarm for the costs of responding to the PCE contamination, under § 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B). Having resolved all of the motions with respect to Count I of the second amended complaint, this Court will examine the issues in connection with Count III.

### III. COUNT III—RCRA

Under Count III, Westfarm seeks a declaratory judgment and injunctive relief against IFI in connection with alleged violations of the requirements of RCRA, under § 7002(a) of RCRA, 42 U.S.C. § 6972(a).[10] Specifically, Westfarm seeks a declaratory judgment regarding alleged violations by IFI of applicable regulations and an injunction enjoining IFI both to comply with those regulations and to formulate and execute cleanup efforts at the Tech Road site. IFI has abandoned its third party claim against WSSC under RCRA; consequently, the following discussion does not implicate WSSC.

In contrast to CERCLA, which addresses the cleanup of hazardous substances released into the environment, RCRA establishes a program for the management of hazardous waste from its origin to its ultimate disposal (so-called "cradle to grave" regulation) to ensure that the means of disposal of hazardous waste will prevent escape of those wastes into the environment, and provides an enforcement mechanism to ensure compliance with that program. *See Hazardous Waste Treatment Council v. South Carolina*, 945 F.2d 781, 783 (4th Cir.1991). Section 3006 of RCRA, 42 U.S.C. § 6926, allows the states to develop hazardous waste programs at least as stringent as RCRA, subject to authorization by the Administrator of the EPA. After receiving authorization, the state may implement its hazardous waste program "in lieu of the Federal program." Section 3006(b) of RCRA, 42 U.S.C. § 6926(b). Maryland has received final authorization for its hazardous waste program. *See* 50 Fed.Reg. 3511 (Jan. 25, 1985).

Westfarm alleges that IFI has violated and continues to violate two types of regulations under Maryland's hazardous waste program: first, regulations of generators of hazardous waste, COMAR 26.13.03, and second, regula-

---

**9.** Parenthetically, to the extent that the decision in *Fairchild Indus.* approved the assertion of equitable defenses in an action brought by the government, that holding appears contrary to the majority of the case law. *See United States v. Davis*, 794 F.Supp. 67, 71 (D.R.I.1992) (citing cases).

**10.** Section 7002(a) provides that

any person may commence a civil action on his own behalf—

(1)(A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person, including ... any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility,

who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment....

The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, ... and to apply any appropriate civil penalties under section 6928(a) and (g) of this title.

42 U.S.C. § 6972(a).

tions of owners and operators of hazardous waste treatment, storage, and disposal ("TSD") facilities. COMAR 26.13.05. IFI argues first, that the domestic sewage exemption takes it outside the scope of the regulations; second, that the Tech Road site is not a TSD facility; and finally, even assuming that IFI violated those regulations, this Court cannot order it to clean up its land absent a threat of endangerment to health or the environment. This Court will address each of those arguments in turn.

### A. *Domestic Sewage Exemption*

■ The Maryland hazardous waste program places restrictions on generators of hazardous waste. *See* COMAR 26.13.03. IFI first argues that the PCE contaminating the groundwater under Westfarm's land is not "hazardous waste" within the meaning of the Maryland regulations. In particular, IFI argues that the PCE that its employees poured down the drain is domestic sewage not subject to regulation.

Although the Maryland regulations broadly define "solid waste," [11] the regulations exclude domestic sewage, defined as untreated sanitary wastes passing through a sewer system to a publicly-owned treatment works. COMAR 26.13.02.04A(1). As such, Maryland's exemption is narrower than the comparable federal regulation, which excludes *"[a]ny mixture* of domestic sewage *and other wastes* that passes through a sewer system to a publicly owned treatment works for treatment." 40 C.F.R. § 261.4(a)(1)(ii) (emphasis added). Because the Maryland program controls, and because, as an industrial entity, IFI does not produce "domestic sewage," *see Comite pro Rescate de la Salud v. Puerto Rico Aqueduct and Sewer Auth.,* 888 F.2d 180, 181–82 (1st Cir.1989), this Court concludes that the domestic sewage exemption does not apply to the PCE that IFI poured down the drain at the Tech Road site.

### B. *TSD Facility*

■ Westfarm asserts that because the Tech Road site is a TSD facility, IFI must comply with the applicable regulations in the Maryland hazardous waste program pertaining to such facilities. In opposition to those assertions, IFI argues that the Tech Road site was neither a disposal facility nor a treatment facility.

As noted above, the Maryland regulations broadly define the term "disposal" to include both active and passive human activity. However, those same regulations define a "disposal facility" narrowly as "a facility or part of a facility at which hazardous waste is *intentionally* placed into or on any land or water, and at which waste will remain after closure." COMAR 26.13.01.03B(16) (emphasis added). IFI argues that it never intentionally placed PCE in the soil or groundwater at the Tech Road site, and the plaintiff has failed to submit evidence to support an inference to the contrary. Although IFI admittedly poured PCE wastes down the drain and placed PCE wastes in its dumpster, this Court cannot conclude that IFI *intended* the PCE to leak into the ground or groundwater at the Tech Road site or to remain there indefinitely. As a result, this Court cannot conclude that IFI is the owner and operator of a disposal facility under the Maryland hazardous waste program.

■ In contrast, IFI admittedly accepted samples of PCE from outside sources and subjected those samples to testing and treatment within the meaning of the Maryland hazardous waste program. However, IFI argues, the treatment of those samples occurred in an enclosed environment—a "steam sparger" used to separate PCE from filters—and therefore falls within an exception for a "totally enclosed treatment facility." COMAR 26.13.01.03B(81), 26.13.05.01A(3)(f).

The exception for a totally enclosed treatment facility requires that such a facility be "directly connected to an industrial production process." COMAR 26.13.01.03B(81). In the case at bar, however, the steam sparger was not directly connected to the industrial process that generated the PCE treated

---

11. Under the Maryland hazardous waste program, "solid waste" includes any discarded material, COMAR 26.13.02.02A, which in turn includes material that has been "disposed of."

COMAR 26.13.02.02B(1). As noted in more detail above, IFI "disposed of" PCE at the Tech Road site.

within it. 55 Fed.Reg. 25454, 25467 (June 21, 1990) ("Treatment facilities located off the site of generation are not directly connected to an industrial process. Thus, commercial waste treatment facilities ... such as solvent reclamation facilities, by definition ordinarily would not be totally enclosed"). Accordingly, IFI's steam sparger was not a totally enclosed treatment facility within the scope of the Maryland hazardous waste program.[12]

### C. Conclusion

The foregoing discussion demonstrates that IFI violated the applicable regulations of the Maryland hazardous waste program. Westfarm therefore is entitled to judgment under § 7002(a)(1)(A) of RCRA, 42 U.S.C. § 6972(a)(1)(A), and this Court will enjoin IFI to comply with those regulations.

However, Westfarm also has requested that this Court enter an injunction enjoining IFI to clean up its land. Such relief would be available under § 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), upon a showing that IFI contributed to the handling, storage, treatment, transportation, or disposal of PCE, thus presenting an imminent and substantial endangerment to health or the environment. At this stage of the proceedings, Westfarm has never attempted to make any such showing, and therefore no such order will issue.

### IV. STATE LAW CLAIMS

In Counts IV, V, VI, and VII Westfarm asserts claims against IFI and WSSC under state law theories of negligence, trespass, nuisance, and strict liability.[13] Additionally, IFI seeks contribution and indemnity from WSSC under state law. In the context of the pending motions, however, only WSSC seeks summary judgment as to these claims, against both Westfarm and IFI. This Court now will consider the merits of those motions.

### A. Negligence

■ The parties all agree that Maryland law applies to the state law claims asserted in this case. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 73, 58 S.Ct. 817, 819, 82 L.Ed. 1188 (1938). In support of its motion for summary judgment on the claim of negligence, WSSC argues first, that it owed no duty of care to Westfarm or IFI; second, that it had no notice of any defective condition in the Tech Road Sewer; and third, that the evidence of record compels a conclusion that IFI was the sole proximate cause of all of the groundwater contamination.

■ However, according to the treatise relied upon by WSSC:

municipalities are generally liable for negligence in the construction or failure to repair sewers and drains. Municipal liability for negligence in failure to repair is generally the same, in extent, as for negligence in the construction of sewers, or in the failure to keep sewers free from obstructions. Liability may arise when the municipality had actual or constructive notice of the existence of an obstruction and fails to act.

McQuillen, Municipal Corporations § 53.125, at 237 (footnotes omitted) (citing *True v. Mayor & Comm'rs of Westernport,* 196 Md. 280, 76 A.2d 135 (1950); *Hanrahan v. City of Baltimore,* 114 Md. 517, 80 A. 312 (1911); *Mayor & Comm'rs of Frostburg v. Duffy,* 70 Md. 47, 16 A. 642 (1889); *Hitchins v. Town of Frostburg,* 68 Md. 100, 11 A. 826 (1887)). Accordingly, WSSC had a duty to exercise reasonable care in the construction and maintenance of the Tech Road Sewer. Moreover, to the extent that reasonable inspection would have revealed the cracks in the Tech Road Sewer, WSSC had constructive notice of those defects. The evidence in this record does not establish beyond question that WSSC satisfied that standard of care.

---

**12.** In addition to the Maryland regulations that govern treatment facilities, Westfarm asserts that IFI has violated Maryland regulations that govern generators of hazardous waste. In its opposition to Westfarm's motion for partial summary judgment against it, IFI has not raised any arguments in opposition to that latter claim.

**13.** Specifically, Westfarm asserts all of those claims against IFI and all but strict liability against WSSC.

The evidence also fails to demonstrate that IFI was the sole cause of all of the contamination in the area of the Tech Road Sewer. The expert testimony on that issue differs, and the groundwater testing results in evidence indicate slightly higher concentrations of PCE near Somerset, farther away from IFI but closer to the bend in the Tech Road Sewer. In the context of these genuine issues of material fact, this Court cannot grant summary judgment in favor of WSSC on the issue of negligence.

### B. *Trespass*

 IFI does not assert a claim of trespass against WSSC, but instead seeks contribution and indemnification from WSSC for trespasses on the property of the plaintiff. Although WSSC again argues that IFI was the sole proximate cause of the contamination of that land, as noted above, the evidence presently in the record in this case is less than compelling. Accordingly, genuine issues of material fact preclude this Court from granting summary judgment in favor of WSSC on the issue of trespass.

### C. *Nuisance*

 In Maryland, "[a] municipality, in establishing drains and sewers, is subject to liability if it so constructed and maintained them as to create a private nuisance, so as to injure another in the use and enjoyment of his property." *Livezey v. Bel Air*, 174 Md. 568, 577, 199 A. 838 (1938). In support of its motion for summary judgment, WSSC argues that it cannot be held liable for failing to abate a nuisance caused by another party.

However, Westfarm asserts that PCE migrating into the groundwater from the Tech Road site constituted a nuisance, and also that PCE migrating into the groundwater from the Tech Road Sewer constituted a nuisance. Because Westfarm does not seek to hold WSSC liable for the disposal of PCE from the Tech Road site, but instead only for the discharge of PCE from the Tech Road Sewer, over which WSSC had control, summary judgment on the issue of nuisance will be denied.

### D. *Strict Liability*

The last common law claim asserted in the second amended complaint is for strict liability for abnormally dangerous activities. *See Yommer v. McKenzie*, 255 Md. 220, 224, 257 A.2d 138 (1969) (recognizing cause of action under § 520 of the Restatement (Second) of Torts). In its third party complaint, IFI seeks contribution and indemnification from WSSC on that claim.

 In support of its motion, WSSC argues that the operation of a sewer system is not an abnormally dangerous activity within the scope of § 520. Although IFI disputes it, that defendant has cited no case to contradict WSSC's contention. Applying the test adopted by the court in *Yommer*, this Court agrees with WSSC.

The defendant in *Yommer* kept an underground storage tank for gasoline, the contents of which leaked into a nearby well used for drinking water. Given the high risk of harm and the inappropriateness of placing such a tank in close proximity to a family well, the court in *Yommer* concluded that keeping such a tank was an abnormally dangerous activity. In this case, in contrast, maintaining a sewer system is a highly appropriate use of the land beneath Tech Road, and does not involve the collection and storage of large quantities of material in a certain place.

### E. *Contribution and Indemnification*

 Although it raises no arguments against the claim for contribution asserted by IFI, WSSC argues that IFI may not recover indemnification. In Maryland, one tortfeasor may receive indemnification from another tortfeasor "where his own conduct, although negligent, is considered to be passive or secondary." *Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 595 (D.Md.1985).

In the case at bar, the evidence demonstrates that PCE was released into the environment from the Tech Road site and from the Tech Road Sewer. No negligence on the part of WSSC, either active or passive, could be said to have contributed to releases from the Tech Road site; indeed, presuming that the factfinder ultimately finds both IFI and

WSSC negligent, to the extent that all of the PCE within the Tech Road Sewer originated at IFI's facility, only willful blindness could lead the factfinder to conclude that the negligence of WSSC was more active than the negligence of IFI. Accordingly, this case does not present a situation where indemnification between the parties would be proper.

## V. CONCLUSION

The conclusions reached during the course of the above discussion can be summarized briefly. With regard to Count I, this Court holds that both IFI and WSSC are potentially responsible parties under CERCLA, and that WSSC may not avail itself of the innocent landowner defense in § 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3), and this Court will enter a declaratory judgment to that effect. With regard to Count III, this Court holds that IFI has violated the provisions of the Maryland hazardous waste program implemented pursuant to § 3006 of RCRA, 42 U.S.C. § 6926, and this Court will enjoin IFI to comply with those regulations. With regard to the several claims brought pursuant to Maryland state law, this Court holds that genuine issues of material fact preclude granting summary judgment in favor of WSSC. Finally, with respect to IFI's claim of strict liability against WSSC and for indemnification from WSSC under state law, this Court will grant summary judgment in favor of WSSC.

This Court will execute an Order in accordance with the foregoing Memorandum.

### ORDER

In accordance with the Memorandum issued on this date in the above-captioned case, it is this 16 day of July, 1993, by the United States District Court for the District of Maryland,

**ORDERED:**

(1) that the motion of the plaintiff, Westfarm Associates Limited Partnership, for partial summary judgment against the International Fabricare Institute be, and the same hereby is, *Granted;*

(2) that the motion of the plaintiff for partial summary judgment against the Washington Suburban Sanitary Commission be, and the same hereby is, *Granted;*

(3) that the International Fabricare Institute and Washington Suburban Sanitary Commission be, and the same hereby are, *Declared* to be liable to the plaintiff, Westfarm Associates Limited Partnership under § 107(a) of CERCLA, 42 U.S.C. § 9607(a), for any and all costs that the plaintiff has incurred or will incur in responding to PCE contamination of the parcels of land designated as Parcel A, Allegany, and Somerset, to the extent that such costs were or are necessary and consistent with the National Contingency Plan;

(4) that the International Fabricare Institute be, and the same hereby is, *Directed* to comply with those provisions of the Maryland hazardous waste program applicable to generators of hazardous waste and to owners and operators of hazardous waste treatment, storage and disposal facilities;

(5) that the motion of the defendant/third party defendant, Washington Suburban Sanitary Commission, for summary judgment against Westfarm Associates Limited Partnership be, and the same hereby is, *Denied;*

(6) that the motion of the defendant/third party defendant for summary judgment against International Fabricare Institute be, and the same hereby is, *Granted in Part* and *Denied in Part;*

(7) that the third party complaint be, and the same hereby is, *Dismissed* to the extent it asserts a claim for strict liability or for indemnification against Washington Suburban Sanitary Commission; and

(8) that the Clerk of the Court shall mail a copy of this Order to Magistrate Judge Catherine C. Blake and to all of the parties.