# Richmond

## City of Richmond v. John Best.

December 7, 1942.

Record No. 2566.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and
Eggleston, JJ.

The opinion states the case.

*Horace H. Edwards* and *Olin A. Rogers*, for the plaintiff in error.

*Charles W. Crowder, Donald D. Williams* and *Lewis W. Martin,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This is a personal injury case in which the plaintiff, John Best, recovered a judgment against the defendant, City of Richmond, for the sum of $10,000, which the defendant, upon writ of error, is seeking to reverse.

The first assignment of error is:

"The failure of the trial court to set aside the verdict and enter judgment for the defendant upon the ground that the plaintiff was guilty of contributory negligence as a matter of law."

On the morning of January 3, 1940, at 12:45 a. m., plaintiff was awakened by his wife, in order that he might go to the plant of the American Tobacco Company to get five women, employees of the plant, and convey them to their respective homes. When he arrived at the plant, the women entered the automobile and were seated, two of them upon the front seat with the plaintiff and three upon the rear seat. After leaving the plant, plaintiff proceeded down the Petersburg pike to Hull street, and thence northwardly down Hull street to near its intersection with Eighth street, at which point the automobile crashed into a concrete light

pole situated on the left side of Hull street. The car was completely demolished and the plaintiff, as a result of the accident, was totally and permanently paralyzed, due to injury to the cervical portion of the spine. He also received a fractured leg which he later lost by amputation.

No question is raised by defendant as to the extent of plaintiff's injuries or the amount of the damages awarded.

The basis of plaintiff's right of action is that the accident resulted from a formation of ice upon Hull street between Ninth and Tenth srteets, caused by a broken water main; that the water main had not been reported at the time of the accident; that no precautions had been taken to make the street safe for travel after the ice had formed; and that no warning of the dangerous condition of Hull street was given.

It is conclusively shown by the evidence that the weather was extremely cold for a period of time prior to the accident. It is further shown that on December 31, 1939, the police department of defendant had notice of the break in the water main and the icy condition of Hull street. On the morning of January 2, 1940, the icy condition of Hull street was brought to the attention of the Department of Public Works, which is charged with the upkeep of city streets, and also to the Department of Public Utilities, which has supervision over the water system. The Department of Public Utilities, upon receiving notice of the break in the water main, sent one of its employees to the scene. He found that water was coming out upon the street, but did not consider the situation sufficiently serious to stop traffic over the street; nor did he, at this time, have anything done to stop the leak. Later in the day cinders were scattered over the area where the water was running and where the ice had formed. Not until seven o'clock that evening was any effort put forth to ascertain the source of the leak. About nine o'clock p. m. the two superintendents of the water and street departments had men on the scene operating a compressor, drilling holes through the cobble stones along the street, in an effort to find the leak. When this operation was begun, a "Men Working" sign

was placed at Tenth street in the northbound traffic lane. This sign was flanked by two lighted lanterns. At the time the men were operating the compressor, the water was leaking 150 feet north of the sign near Ninth street, the thermometer was below freezing and a sheet of ice was forming on the east side of Hull street. In an effort to remedy this situation, two tons of sand had been scattered on the street that night at approximately 8:30 p. m. Efforts to locate the break in the water main continued until 11:30 p. m., but without success. Though the thermometer registered below the freezing point, and the water continued to flow, it was decided to abandon operations until the following day. Before the men left Hull street they parked the air compressor against the east side of the street and left the sign "Men Working" at Tenth street, flanked by two lighted lanterns. Another "Men Working" sign was placed near Ninth street and lanterns were placed every few feet alongside the eastern rail of the street car track to Ninth street. While these lanterns were burning at 11:30 p. m., there is a conflict of evidence in regard to their burning when the accident occurred. The evidence is conclusive that the employees of the defendant left Hull street without putting up a detour sign, without notifying the traveling public of the dangerous condition of the street due to the formation of the ice, or without erecting any barrier to protect the traveling public.

[■] It is a matter of common knowledge that "Men Working" signs are placed along the highways and city streets to protect workers thereon, and they are in no sense proclamations of danger ahead due to the dangerous condition of the street or highway.

While exceptions were taken to the evidence offered by plaintiff that several cars had skidded on the ice during the day of January 2nd, and that several minor accidents had occurred by reason of the ice on the street, no complaint of this evidence is offered in the petition for a writ of error. Whether the evidence was admissible is, therefore, not an issue. However, it plainly shows that the agents of defendant

were derelict in their duty in regard to remedying the dangerous situation.

The plaintiff has, in our opinion, borne the burden imposed upon him by law of showing that the defendant was guilty of actionable negligence and is entitled to recover damages, unless he was guilty of such contributory negligence as bars a recovery. This conclusion is supported by the assignment of error which raises the sole question that plaintiff was guilty of contributory negligence as a matter of law.

. Has the defendant borne the burden of showing that plaintiff was guilty of contributory negligence which bars a recovery? We think not.

The evidence relied upon by defendant to sustain its contention is to the effect that plaintiff was running at an excessive rate of speed when he entered Hull street where the ice had formed, as evidenced by the fact that he traveled three hundred and forty-seven feet after the skidding began; and that the ice upon the street was open and obvious and, therefore, plaintiff should have observed the situation.

On the question of the rate of speed plaintiff was traveling at the time of the accident, the evidence is in conflict. Police officer Meeks testified in regard to the rate of speed: "I couldn't say for sure. It looked like it was doing 30 or 35 miles an hour."

L. E. Newcome, a street car motorman, testified that a black car which looked like the wrecked car, passed him six blocks from the accident, going at a rapid rate of speed.

The plaintiff was not questioned as to the rate of speed he was traveling when the car began to skid.

Sadie Randolph, a witness for plaintiff, in answer to the question: "How fast was John driving?" answered, "I don't know how fast he was driving, but he wasn't driving very fast. He was a very careful driver."

Ida Woodson, a witness for plaintiff, stated that she could not state the speed the car was going at the time it began to skid, but that it was "going slow;" that plaintiff was "a nice driver, never going fast."

A most significant fact appearing in the evidence is that while the occupants of plaintiff's car were being taken from the wreckage, another car skidded over the same route taken by plaintiff's car.

On the second phase of the question, viz, that the dangerous condition of the street due to the ice was "open and obvious," we are of opinion that defendant has failed to carry the burden of proof. There is no evidence whatever that ice was on any of the streets of the city except on Hull street. Before reaching Hull street, the roadway was dry. Had there been snow or ice on the streets generally, this condition might have been a warning to proceed cautiously. Until one approached the icy area, there was nothing except the "Men Working" signs, flanked by lanterns, to indicate anything unusual.

[■ From the fact that several cars had skidded on the ice and that a part of the street was covered with sand, the jury was warranted in drawing the conclusion that the dangerous condition was not open and obvious.

While it is argued that there is no conflict in the evidence on the question of obvious danger, we are of opinion that there is such a conflict and that its determination was a question for the jury.

Mrs. Pearl Kaloski, when questioned in regard to the icy condition of the street, stated: "You couldn't see it very good; you had to get almost to it. Some places it was more than other places."

It is contended that the place in Hull street where the ice began to form is illuminated by three ornamental lights. While it is true that the witness Wiley testified that these lights were burning at 7:30 p. m., there is no evidence that they were burning at the time of the accident, at 12:45 a. m.

On the question of the contributory negligence of the plaintiff, the case has been fairly submitted to the jury and in view of the parol evidence introduced and the physical facts displayed by a view of the scene of the accident, the jury were warranted in finding a verdict for the plaintiff.

There is no merit in this assignment of error.

The second and last assignment of error is as follows:

"Failure of the trial court to set aside the verdict and enter judgment for the defendant upon the ground that the plaintiff had omitted to prove before the jury was discharged and the trial ended the essential jurisdictional fact that notice of his claim had been served upon the city pursuant to section 6043 (a) of the Code of Virginia."

Section 19-g of the charter of the City of Richmond and section 6043-a of Michie's Code, Acts 1938, p. 360, read as follows:

"19-g.  * * * No action shall be maintained against the said city for damages for any injury to any person or property alleged to have been sustained by reason of the negligence of the city, or of any officer, agent or employee thereof, unless a written statement, verified by the oath of the claimant, his agent or attorney, or the personal representative of any decedent whose death is the result of the alleged negligence of the city, its officers, agents or employees, of the nature of the claim and the time and place at which the injury is alleged to have occurred or been received shall have been filed with the city attorney of said city within sixty days after such cause of action shall have accrued, and no officer, agent or employee of the city shall have authority to waive such conditions precedent or any of them."

"Section 6043-a. *Notice to be given cities and towns of claims for damages for negligence.*—No action shall be maintained against any city or town for injury to any person or property or for wrongful death alleged to have been sustained by reason of the negligence of the city or town, or of any officer, agent or employee thereof, unless a written statement by the claimant, his agent, attorney or representative, of the nature of the claim and of the time and place at which the injury is alleged to have occurred or been received, shall have been filed with the city attorney or town attorney, or with the mayor, or chief executive, within sixty days after such cause of action shall have accrued, except where the claimant is an infant or *non compos mentis,* or the injured party dies within such sixty days, such statement may

be filed within one hundred and twenty days; and statements pursuant to this act shall be valid, notwithstanding any charter provision of any city or town."

In the notice of motion for judgment, this specific allegation is made:

"I further allege that I complied with Section 6043(a) of the Code of Virginia by filing with your City Attorney, within sixty days after my cause of action accrued, my written statement setting forth the nature of my claim and the time and place at which my injuries are alleged to have occurred or been received."

It is to be observed that the assignment of error is not based upon the failure of the plaintiff to give the notice required by the charter and the statute, but is based upon the undisputed fact that plaintiff failed to prove that the notice had been given.

The contention is made by defendant that the giving of the notice was a condition precedent to the right of the plaintiff to maintain his action, and that it was incumbent upon him, not only to allege, but to prove that the notice was given in order to confer jurisdiction upon the court.

Section 19-g of the charter of the city, as it was before it was amended by the insertion of the language "and no officer, agent or employee of the city shall have authority to waive such conditions precedent or any of them," was construed by this court in the pioneer case of *O'Neil* v. *Richmond*, 141 Va. 168, 126 S. E. 56. In that case Prentis, J., said:

"The reasons for these statutes have been frequently indicated. They afford the city authorities the opportunity to investigate the circumstances, examine the locality in which the injury is alleged to have occurred, and to discover the witnesses promptly so as to ascertain the facts while their recollections are fresh. Such statutes tend to discourage and avoid the expense of litigation, because if the investigation discloses legal liability a prompt settlement is both proper and probable."

In *Richmond* v. *Jeter*, 149 Va. 235, 141 S. E. 260, this is said:

■ "It must be conceded that the filing of the required charter notice is a condition precedent to the maintenance of the action against the city. This was also held in *O'Neil* v. *City of Richmond * * * *."*

This also was said in the *Jeter case, supra*:

■ "A number of cases have been cited by counsel for the defendant city, holding that statutes of a similar character are mandatory, and the giving of the notice is a condition precedent to the right to bring such action, and the fact that notice has been given must be averred and proved by the plaintiff to avoid a dismissal of the action. Our decisions are in harmony with these cases on the question that notice must be filed as required by the statute. On the question that it must be averred in the notice or declaration that the notice has been given, we agree with the trial court that the rules of pleading require that this be done in order to show jurisdiction. We also agree with the trial court that this is not a condition precedent to the right to bring action."

In *Bowles* v. *Richmond*, 147 Va. 720, 727, 129 S. E. 489, 133 S. E. 593, Judge Christian said:

■ "While the courts are unanimous that giving the notice is a condition precedent to the right to bring the suit, still recognizing that the reason of the law is the life of the law, they hold that the statute should have a liberal construction, and a substantial compliance with it is sufficient."

The above cases specifically hold that in order to show jurisdiction it is essential that the required notice must be given and that fact must be averred in the notice of motion or declaration in order to maintain the action. However, there is no intention in the case that proof that the notice was given is essential to confer jurisdiction. The reason for the requirement that it must be averred that the notice was given, is to show jurisdiction and to permit the court to proceed with the trial. The only concern of the court is the fact that it has jurisdiction to proceed with the case, not what the proof adduced by the plaintiff may show at the end of the trial.

It is to be observed that the language in the charter is that the action cannot be *maintained* unless the notice is given. Nothing whatever is said about proof in regard thereto.

■ That there is a distinction between the institution of an action and the maintenance of an action is clearly shown in *Jackson* v. *Richmond*, 152 Va. 74, 91, 146 S. E. 303. Speaking for the court, Mr. Chief Justice Prentis, construing section 19-g of the Richmond city charter, said:

"The language of section 19-g does not, specifically, prohibit *the institution* of an action, but does prohibit the *maintenance* of an action unless the required notice has been given. It expressly recognizes the fact that a cause of action (made *inchoate* it is true by the statute) may have accrued, but provides that even though such cause of action may have accrued it cannot be ultimately maintained unless the notice shall be given within the prescribed six months. The intention of the General Assembly, as expressed, does not then in terms prohibit the institution of such an action, but does expressly prohibit its successful prosecution or maintenance unless the notice required by the statute is given. The failure to give the notice supplies the defendant with a defense to the action. We fully recognize that it is clearly settled, under such statutes, that the giving of such notice should be alleged in the declaration."

It is thus seen that the court's jurisdiction depended not upon proof that the notice was given but upon the averment in the pleading that the notice was given.

■ In our opinion it conclusively appears that the trial court possessed jurisdiction to try the case upon the merits, and, therefore, the judgment entered is not void. It simply lacks proof to sustain the averment in the pleading that the notice required was given. In other words, the situation here is similar to the situation in a criminal case where the accused has been convicted upon a charge of felony, and, after verdict, a motion is made to set aside the verdict and dismiss the prosecution on the ground that the *corpus delicti* has not been proven. The trial court, however, overrules the motion of defendant and enters judgment upon the verdict. Surely

this court, upon appeal, would not hold the judgment void and thus discharge the felon. The proper action to be taken would be to hold that the averment in the indictment of the commission of a felony had not been sustained by the proof, and therefore, the accused was entitled to a new trial.

In the case at bar there has been a trial upon the merits of the case, conducted by able and astute counsel. Upon adequate proof, the jury have found a verdict in favor of the plaintiff. This being true, the case of plaintiff falls within the beneficent provisions of section 6365 of the Code, Acts 1902-3-4, page 781.

Though the verdict is for a large amount, no complaint is made that it is excessive, for the apparent reason that the injuries suffered by plaintiff are severe and render him an incurable invalid.

While the motion to set aside the verdict was pending, plaintiff sought to introduce in evidence a copy of the original notice which had upon it this endorsement: "The original of this paper was received in the City Attorney's office on Feb. 26, 1940.

(Signed)   Olin A. Rogers,
Asst. City Atty."

Counsel for defendant objected to the introduction of this paper and the court very properly sustained the objection.

By way of recapitulation we hold that: 1st. In order to maintain the action and to show the jurisdiction of the trial court, it is essential that the giving of the required notice should be averred in the declaration or notice of motion; 2nd. In order to avoid a dismissal of the action because of lack of proof, it is essential to prove that the required notice has been given as averred in the pleading.

Proof that the statutory notice has been given is but "the statement of a fact which occurred after the cause of action accrued and is in no way descriptive of or explanatory of such cause of action."

In Burks' Pleading and Practice, 3d Ed., sec. 401, p. 762, it is aptly said: "No definite rule can be stated as to when the case will be remanded for a trial *de novo* or for

a trial on certain designated points. The matter lies largely in the discretion of the appellate court and its exercise depends upon the facts and circumstances of the particular case. If upon the whole record, the ends of justice will be best served by a new trial upon all the issues, it will be so ordered." See *Idem*, page 762, note 84, for numerous cases which were remanded for new trials on designated points or issues.

[■■ ■■ For the reasons stated, the judgment of the trial court will be reversed, the verdict of the jury set aside and the case will be remanded for a new trial upon the sole question of whether or not the notice required by section 6043 (a), Michie's Code, Acts 1938, p. 360, and section 19-g of the charter of the defendant was given within the time specified in the charter provision.

In the event of a finding for the plaintiff, the trial court will enter judgment pursuant to the former verdict of the jury. The defendant in error, having substantially prevailed in this court, is entitled to recover his costs in this behalf.

*Reversed and remanded.*