Lynne C. QUIGLEY, et al.

v.

**UNITED STATES of America, et al.**

**Civil Action No. DKC 11–3223.**

United States District Court,
D. Maryland.

March 22, 2012.

Opinion Denying Reconsideration
June 5, 2012.

Robert G. McGinley, Law Offices of Robert G. McGinley PC, Bowie, MD, Mark Andrew Towery, Blankingship and Keith PC, Fairfax, VA, Jeffrey D. Raden, Law Offices of Jeffrey D. Raden LLC, Silver Spring, MD, Amy M. Orsi, Stephen Allen Markey, III, Law Offices of Stephen A. Markey III PC, Towson, MD, for Plaintiffs.

Alex S. Gordon, Office of the United States Attorney, Baltimore, MD, Russel Lee Beers, Washington Suburban Sanitary Commission, Laurel, MD, Paul F. Leonard, Jr., Rockville, MD, Michael T. O. Bryant, Lipshultz and Hone Chtd, Silver Spring, MD, for Defendants.

## MEMORANDUM OPINION

DEBORAH K. CHASANOW, District Judge.

Presently pending and ready for review in this consolidated tort action are three motions to dismiss filed by Defendant Washington Suburban Sanitary Commission ("WSSC"). (ECF Nos. 13, 22, 27). The issues have been briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motions to dismiss will be granted in part and denied in part.

## I. Background

Three cases are consolidated in this action: *Quigley v. United States*, No. DKC 11–3223; *Ochoa v. United States*, No. DKC 11–3224; and *Barbosa v. United States*, No. DKC 11–3225. The allegations contained in the complaints for the three cases are largely identical and describe the same accident. (*See* ECF Nos. 1, 21, 26). The following allegations are taken from the original complaint filed by Plaintiffs Lynne C. Quigley, Miles C. Quigley, and the estate of Joseph Quigley (ECF No. 1), unless otherwise indicated.

### A. Factual Background

At some point during the overnight hours of January 19, 2009, a water main maintained by WSSC burst under Ridge Drive near the intersection of 64th Street in the Bethesda area of Montgomery County, Maryland. After the main ruptured, WSSC increased the water pressure, which amplified the flow of water.[1] Water from the main escaped into the street, where it collected and flowed into a storm drain at the intersection of Ridge Drive and 64th Street. The storm drain was maintained by Defendant Montgomery County ("the County"). Due to a breach in the storm drain, the water made its way

---

1. It is WSSC's protocol that upon learning of a broken main, WSSC increases the water pressure to prevent water from backing up within its system. (ECF No. 21 ¶ 26; ECF No. 26 ¶ 26).

down a hillside onto the adjacent Clara Barton Parkway ("the Parkway"), a limited access urban freeway maintained by Defendant United States through its Department of the Interior and National Park Service.

On January 20, 2009, the temperature in the vicinity was below freezing. As a result, the water from the burst main that had collected on the Parkway froze into ice. The ice covered both westbound lanes of the Parkway for approximately 200 yards. There was no other appreciable rain, sleet, snow, or other precipitation in the area.

Around 5:24 a.m. that day, decedent Joseph Quigley was driving eastbound on the Parkway. At about the same time, Defendant Marcelo Pepe was driving westbound. Plaintiff Adriana Ochoa and Plaintiff Pollyana Barbosa were passengers in Mr. Pepe's vehicle. (ECF No. 21, at 3; ECF No. 26, at 3). Mr. Pepe encountered the ice caused by the burst main, lost control of his vehicle, crossed the median into the eastbound lanes, and collided with Mr. Quigley's vehicle. Mr. Quigley sustained injuries from which he eventually died. In Mr. Pepe's vehicle, Ms. Ochoa sustained injuries. (ECF No. 21 ¶ 32). Ms. Barbosa, who was originally in the back seat, was ejected from the vehicle and landed on top of the burning exhaust system of the vehicle, all of which caused injuries and first-, second-, and third-degree burns. (ECF No. 26 ¶¶ 32, 35).

## B. Procedural Background

On November 11, 2011, Plaintiffs Lynne C. Quigley and Miles C. Quigley, individually and as personal representatives of the estate of Joseph Quigley ("the Quigley Plaintiffs"), brought a wrongful death and survival action against Defendants in this court.[2] Their original complaint contains six counts: (1) strict liability against WSSC; (2) negligence against WSSC and a Doe Defendant employee of WSSC; (3) strict liability against the County; (4) negligence against the County and a Doe Defendant employee of the County; (5) negligence against the United States; and (6) negligence against Mr. Pepe.[3] Separately, Ms. Ochoa and Ms. Barbosa filed complaints asserting identical counts.

On December 13, 2011, WSSC filed a motion to dismiss the claims asserted against it in each of the three actions. (ECF Nos. 13, 22, 27).[4] The Quigley Plaintiffs, Ms. Ochoa, and Ms. Barbosa, respectively, opposed WSSC's motions. (ECF Nos. 19, 25, 34). The three cases were consolidated for all purposes by court order on January 4, 2012. (ECF No. 20). On January 18, 2012, WSSC filed one omnibus reply to all three oppositions. (ECF No. 31).[5]

---

2. Federal jurisdiction is predicated on the Federal Tort Claims Act claim against the United States, with supplemental jurisdiction as the basis for all other claims.

3. On January 10, 2012, the parties entered into a stipulation in which the County and WSSC agreed that to the extent any of their employees were found responsible for the injuries in this matter, the County and WSSC, respectively, would "stand in the shoes of said employee(s), litigate, and be financially responsible for any judgment that may be entered against any employee(s)." (ECF No. 30).

4. The County filed responses to WSSC's motions in order to clarify that WSSC's arguments were based on erroneous allegations regarding the storm drain. (ECF Nos. 18, 24, 29).

5. On February 27, 2012, the court granted the Quigley Plaintiffs' consent motion for leave to file an amended complaint. (ECF No. 43). The amended complaint adds a new Defendant, United Services Automobile Association Casualty Insurance Co., via a seventh count. (ECF No. 44). The original claims otherwise remain the same, and Defendants are not required to refile responses.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the com-

plaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.  Analysis

WSSC moves to dismiss the three complaints on largely identical bases. As to Ms. Barbosa's claims, however, WSSC advances one additional argument regarding the sufficiency of her notice to WSSC under the Local Government Tort Claims Act ("LGTCA"). That argument will be addressed first, and then WSSC's substantive arguments as to Plaintiffs' claims will be addressed.

### A.  Ms. Barbosa's Notice to WSSC

WSSC seeks dismissal of Ms. Barbosa's claims against it on the ground that she failed to comply with the notice requirements of the LGTCA. (ECF No. 27–1, at 11–12). The Barbosa complaint recites that:

> Notice of the Plaintiff's tort claims against WSSC was duly presented at the same time as notice was presented by a passenger in Marcello Lucio Pepe's car, Adriana Ochoa on July 9, 2009. A follow up notice was provided by letter dated October 2, 2009. WSSC denied the claims as untimely despite having actual notice of the claim filed by other victims of the accident.[1]

---

1. On or before July 9, 2009, within 180 days of January 20, 2009, notice was given pursuant to § 5–304 of the Cts. & Jud. Proc. Article by Adriana Ochoa, the Estate of Joseph Quigley and Lynne and Miles Quigley, and Luis Asuncion Vera, to Montgomery County and WSSC. On July 9, 2009, current counsel was retained by Pollyana Barbosa,

who at the time was unaware that a water meter owned by WSSC had broken resulting in water flooding the Clara Barton Parkway where it formed ice. Immediately after receiving the police report, which disclosed Montgomery County and WSSC's negligence, notice of her claim was sent by Pollyana Barbosa on October 2, 2009 pursuant to § 5–304 of the Cts. & Jud. Proc. Article. Because all of the other victims of the accident had already put WSSC and Montgomery County on notice, and Montgomery County and WSSC were in possession of the police report listing Pollyana Barbosa as a victim, WSSC and Montgomery County cannot show they were prejudiced by any technical defect in Pollyana Barbosa's notice as required by § 5–304(c) in order for them to deny her claim.

(ECF No. 26 ¶ 11).

Ms. Barbosa argues that, although she may not have strictly complied with the notice statute, she substantially complied with it. (ECF No. 34, at 19–21). Alternatively, Ms. Barbosa contends that the notice requirement should be waived for good cause and lack of prejudice to WSSC. (*Id.* at 21–24).

### 1. The LGTCA and Substantial Compliance

■ The LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md.Code Ann., Cts. & Jud. Proc. § 5–304(b). For WSSC, which is listed as a "local government" in section 5–301(d)(7), "the notice shall be given in person or by certified mail . . . by the claimant or the representative of the claimant, to . . . corporate authorities." *Id.* § 5–304(c). "[T]he LGTCA creates a procedural obligation that a plaintiff must meet in filing a tort action. A plaintiff must . . . plead . . . satisfaction [of the notice requirement] in his/her complaint." *Hansen v. City of Laurel, Md.,* 420 Md. 670, 694 (2011).

■ The purpose of the notice requirement is

to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, *i.e.,* while the evidence was still fresh and the recollection of the witnesses was undiminished by time, "sufficient to ascertain the character and extent of the injury and its responsibility in connection with it."

*Bartens v. Mayor of Balt.,* 293 Md. 620, 626, 446 A.2d 1136 (1982) (quoting *Jackson v. Bd. of Cnty. Comm'rs,* 233 Md. 164, 167, 195 A.2d 693 (1963)). In light of this purpose, the Court of Appeals of Maryland has held that "strict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice." *Moore v. Norouzi,* 371 Md. 154, 171, 807 A.2d 632 (2002); *accord Faulk v. Ewing,* 371 Md. 284, 298, 808 A.2d 1262 (2002). In *Faulk,* the Court of Appeals explained:

Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute. Substantial compliance requires some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision. In *Condon v. University of Maryland,* 332 Md. 481, 632 A.2d 753 (1993), we said that substantial compliance is "such communication that provides . . . 'requisite and timely notice of facts and circumstances giving rise to the claim.' " *Id.* at 496[, 632 A.2d 753] (quoting *Conaway v.*

*State,* 90 Md.App. 234, 246, 600 A.2d 1133 (1992)).

371 Md. at 299, 808 A.2d 1262 (internal quotations and citations omitted). Substantial compliance, however, requires some effort on the claimant's part to provide notice. In the analogous context of the Maryland Tort Claims Act, the Court of Appeals stated:

> As to substantial compliance itself, even assuming *arguendo* that it would suffice, there was no substantial compliance here. The plaintiffs have not pointed to any facts which would support their claim of substantial compliance. The plaintiffs did not undertake in any way to provide the State with notice of their claim; they rely solely on the State's own efforts in acquiring information about the incident. As we stated in *Simpson* [*v. Moore*], 323 Md. [215,] 228, 592 A.2d [1090,] 1096 [ (1991) ], "[t]he doctrine of substantial compliance has no application to an outright failure to comply." Even if the doctrine of substantial compliance is applicable to the 180–day claim filing requirement, an issue which we do not decide today, substantial compliance requires more than a mere lack of prejudice to the State.

*Johnson v. Md. State Police,* 331 Md. 285, 291–92, 628 A.2d 162 (1993).

█ Here, Ms. Barbosa asserts that any of the notice letters sent by her co-plaintiffs fulfilled her notice obligation under the statute. WSSC primarily challenges these notice letters on the ground that they did not come from Ms. Barbosa or her representative.[6]

Although strict compliance with the statute may not always be required, it does not appear that any Maryland court has yet relaxed the basic requirement that notice be delivered "by the claimant or the representative of the claimant" or that the notice specifically refer to the claim of the Plaintiff. Ms. Barbosa has not alleged any sort of legal relationship between herself and her co-plaintiffs that would overcome this critical hurdle. It is required by the law that *she or her agent* must take an affirmative step towards preserving her rights under the statute. *See Faulk,* 371 Md. at 299, 808 A.2d 1262 ("Substantial compliance requires *some* effort to provide the requisite notice." (emphasis added)). Accordingly, Ms. Barbosa's attempt to piggyback on the timely efforts of others is insufficient to find compliance, substantial or otherwise, with the LGTCA.

## 2. Good Cause

The notice requirement of the LGTCA may be waived for good cause and lack of prejudice to the defendant. Md.Code Ann., Cts. & Jud. Proc. § 5–304(d) ("[U]nless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may enter-

---

**6.** Although WSSC technically only contests Ms. Barbosa's reliance on Ms. Ochoa's notice letter, its arguments will be construed as applying to the Quigley Plaintiffs' notice letter as well because there is some minor confusion about the notice at issue. In her complaint, Ms. Barbosa alleges: "Notice ... was duly presented at the same time as notice was presented by a passenger in Marcello Lucio Pepe's car, Adriana Ochoa on July 9, 2009." (ECF No. 26 ¶ 11). Ms. Ochoa actually sent her notice to WSSC on May 19, 2009. (ECF No. 27–2). It was the Quigley Plaintiffs who sent notice to WSSC on July 9, 2009. (ECF No. 34–2, at 4–5).

Separately, these letters were attached to WSSC's motion and Ms. Barbosa's opposition, respectively. Because they are integral to the complaint and their authenticity is not challenged, they may be relied upon in resolving the pending motion to dismiss without converting it to a motion for summary judgment. *Robinson v. Am. Honda Motor Co.,* 551 F.3d 218, 222–23 (4th Cir.2009).

tain the suit even though the required notice was not given."). The Court of Appeals of Maryland recently explained:

> By the language of the statute, the burden is on the claimant first to show "good cause." Then, if the local government cannot "affirmatively show that its defense has been prejudiced by lack of required notice," the court "may" hear the case despite the faulty notice. This "good cause" exception leaves the courts some discretion in enforcing the notice requirement, and allows a court, in certain circumstances, to avoid an unjust result.

*Prince George's Cnty., Md. v. Longtin,* 419 Md. 450, 467 (2011) (quoting Md.Code Ann., Cts. & Jud. Proc. § 5–304(d)).

■ The test for good cause is "whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Rios v. Montgomery Cnty., Md.,* 386 Md. 104, 141, 872 A.2d 1 (2005) (internal quotations omitted). There are at least four general categories of good cause that have been recognized in Maryland: "[1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard); [2] serious physical or mental injury and/or location out-of-state; [3] the inability to retain counsel in cases involving complex litigation; and [4] ignorance of the statutory notice requirement." *Id.*[7]

■ Here, Ms. Barbosa chiefly argues that good cause to waive the notice requirement exists because her failure to comply strictly with the LGTCA was "excusable." (*See* ECF No. 18, at 23). In an affidavit attached to the opposition, Ms. Barbosa's current counsel, Stephen Markey, explains that he received the police report identifying the water main break as the source of the ice on the road for the first time in September 2009. (ECF No. 18–4 ¶ 5). Shortly thereafter, Mr. Markey sent notice to WSSC regarding Ms. Barbosa's potential claim on October 2, 2009. (*Id.* ¶ 7). Ms. Barbosa argues that even though notice sent by Mr. Markey was not timely, the delay is excusable because he could not have known about the allegedly faulty water main until he received the police report. (*See* ECF No. 18, at 23).

There are far too many gaps, however, for good cause to be found in this case. To begin, Mr. Markey was not Ms. Barbosa's only counsel. Ms. Barbosa was represented by Michael Avery sometime on or before June 9, 2009, which was within the 180–day notice period of the LGTCA. (ECF No. 18–4, at 3).[8] On that date, Mr. Avery withdrew his representation, but Ms. Barbosa does not explain why Mr. Avery's actions (or lack thereof) prior to his withdrawal should not be imputed to her.

To that end, Ms. Barbosa also does not explain why Mr. Avery could not comply with the LGTCA. She readily admits that the police report detailing the water main's contribution to the accident was prepared on May 5, 2009 (ECF No. 18, at 23) and that her co-plaintiffs submitted timely notices to WSSC on May 19, 2009, and July 9, 2009 (ECF No. 18–2). Ms. Barbosa does not, however, identify any reason why her co-plaintiffs' attorneys could respond in a timely manner to the May 5, 2009, police report, but her attorney could not.[9]

---

7. The court in *Rios* also noted that good cause exists "where representations made by local government representatives are misleading." *Id.* at 141–42, 872 A.2d 1.

8. The accident occurred on January 20, 2009. Therefore, the 180th day after the accident was July 19, 2009.

9. In this respect, Ms. Barbosa's reliance on *Westfarm Associates Limited v. Washington*

Mr. Markey only states that Mr. Avery's file regarding her case, which Ms. Barbosa gave to Mr. Markey upon retaining him, did not contain the police report. (ECF No. 18–4 ¶¶ 2–3). But that fact only adds to Mr. Avery's apparent lack of diligence.[10] In short, Ms. Barbosa was represented by Mr. Avery *after* the May 5, 2009, police report was available and *before* the 180–day notice period expired in July 2009. Thus, Ms. Barbosa was represented by counsel during a key time when some form of notice could have—and should have—been sent to WSSC.

Lastly, Ms. Barbosa contends that her physical injuries arising from the accident should excuse the delay in sending notice to WSSC. (ECF No. 18, at 24). Ms. Barbosa again fails to address the glaring question of why Mr. Avery could not prosecute her case during her convalescence. Especially given that Ms. Barbosa could consult with Mr. Avery despite her injuries, she cannot argue that her injuries prevented her from timely notifying WSSC of her potential claims. *Cf. Madore v. Balt. Cnty., Md.*, 34 Md.App. 340, 342–43[, 367 A.2d 54] (1976) (finding no good cause where a seriously-injured plaintiff was without counsel during the 180–day notice period but could have retained counsel "if it had occurred to him").

As Ms. Barbosa has not met her burden to show good cause for waiving the notice requirement of the LGTCA, the court need not address whether WSSC can show it

*Suburban Sanitary Commission*, 66 F.3d 669 (4th Cir.1995), to excuse her delay in sending written notice to WSSC is misplaced. In that case, the plaintiff "promptly investigated the source of [offending contamination] *as soon as* [it] was discovered." *Id.* at 677 (emphasis added). In contrast, here, there is no indication that Ms. Barbosa or Mr. Avery was similarly diligent in investigating the potential causes of the accident.

would be prejudiced by waiving the notice requirement. *See Longtin*, 419 Md. at 467. In conclusion, without good cause to excuse her non-compliance with the LGTCA, Ms. Barbosa's claims against WSSC must be dismissed.

### B. Count One: Strict Liability

Under Count One, Plaintiffs contend that WSSC should be held strictly liable for all damages resulting from the broken water main that was under their control. Plaintiffs allege that WSSC "operated a waterworks in the Maryland suburbs of Washington, D.C., in which it collected, impounded, stored, distributed and sold water by means of a network of underground water main pipes. One such water main ran under Ridge Drive in the Bethesda area of Montgomery County, near its intersection with 64th Street." (ECF No. 1 ¶ 14).

WSSC advances two arguments for dismissing this claim. First, it argues that the maintenance of a water main is not an "abnormally dangerous activity" to which strict liability applies.[11] (ECF No. 13–1, at 4–7; ECF No. 22–1, at 5–7; ECF No. 27–1, at 4–7). Second, it argues that Plaintiffs have not alleged facts showing that WSSC's action was a proximate cause of their injuries. (ECF No. 13–1, at 7–10; ECF No. 22–1, at 7–11; ECF No. 27–1, at 7–10). Because WSSC's first argument is dispositive of this claim, WSSC's second argument need not be addressed here.

10. It is not clear that Mr. Markey himself was diligent either. Upon taking over Ms. Barbosa's case on July 9, 2009 (ECF No. 18–4 ¶ 2)—ten days before the LGTCA notice period expired—one would expect that a "reasonably prudent person" would act quickly to preserve his clients rights.

11. Alternatively, WSSC notes that Plaintiffs' case does not raise a products liability issue, which Plaintiffs concede.

Maryland courts have adopted the modern form of the doctrine of strict liability based on abnormally dangerous activities as set forth in the Restatement (Second) of Torts. *Gallagher v. H.V. Pierhomes, LLC,* 182 Md.App. 94, 105, 957 A.2d 628 (2008). According to the Restatement, "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person . . . of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519 (1977). To determine what constitutes an abnormally dangerous activity, Maryland courts also look to the Restatement, using the six-factor analysis laid out in section 520. *Gallagher,* 182 Md.App. at 105, 957 A.2d 628. Those six factors are:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977).

■ At this stage of the proceedings, the only available facts are those alleged in the complaint. Those allegations say nothing about any of the factors noted in the Restatement. Furthermore, no Maryland appellate decision has yet determined whether the maintenance of public water mains is an abnormally dangerous activity to which strict liability should apply.[12] As a result, Plaintiffs certainly have failed to state a claim for strict liability and that count will be dismissed. Moreover, it is unlikely that they can amend to allege sufficient facts to give rise to such liability.

First, there are Maryland court decisions in which the maintenance of public natural gas lines—a patently more hazardous substance than water—was not deemed to be an abnormally dangerous activity. *E.g., Dudley v. Balt. Gas & Electric Co.,* 98 Md.App. 182, 207–08, 632 A.2d 492 (1993).[13]

Second, an analysis of decisions in other jurisdictions is instructive, *cf. Wade v. Danek Med., Inc.,* 182 F.3d 281, 286 (4th Cir.1999) (looking to "the practices of other states in predicting how the Virginia Supreme Court would rule"), and reveals that the majority of courts that have confronted this question have concluded either

---

**12.** The cases that Plaintiffs cite to in support of finding that strict liability applies are inapposite. Those cases concern the storage of large amounts of water or other liquids near susceptible areas, not the transmission of water or other liquids for public use. *See, e.g., Yommer v. McKenzie,* 255 Md. 220, 257 A.2d 138 (1969) (large gasoline tank near water well); *Balt. Breweries' Co. v. Ranstead,* 78 Md. 501, 28 A. 273 (1894) (substantial amount of privately-collected water and cleaning fluids in populated area).

**13.** In general, absolute liability has been held not to apply to public utilities. *See, e.g., West-*

*farm Assocs. Ltd. v. Int'l Fabricare Inst.,* 846 F.Supp. 422, 437 (D.Md.1993) (operation of sewer system); *Voelker v. Delmarva Power & Light Co.,* 727 F.Supp. 991, 994 (D.Md.1989) (maintenance of power lines). These cases have stressed, among other things, the "appropriate use of the land," *Westfarm Assocs. Ltd.,* 846 F.Supp. at 437, the "value to the community" and the diminished risk of harm due to regulations, *Dudley,* 98 Md.App. at 207–08, 632 A.2d 492, and that as a "matter of common usage," it is inappropriate to hold public utilities as insurers for the community, *Voelker,* 727 F.Supp. at 994.

that the maintenance of public water mains is not an abnormally dangerous activity or, more straightforwardly, that strict liability does not apply. *See, e.g., State Farm Fire & Cas. Co. v. Municipality of Anchorage,* 788 P.2d 726, 729 (Alaska 1990); *John T. Arnold Assocs., Inc. v. City of Wichita,* 5 Kan.App.2d 301, 615 P.2d 814, 826 (Kan. Ct.App.1980); *Jennings Buick, Inc. v. City of Cincinnati,* 56 Ohio St.2d 459, 384 N.E.2d 303, 308 (Ohio 1978); *McDaid v. City of Pendleton,* 4 Or.App. 380, 478 P.2d 642, 643 (Or.Ct.App.1970); *Midwest Oil Co. v. City of Aberdeen,* 69 S.D. 343, 10 N.W.2d 701, 702 (1943); *Summit Hill Assocs. v. Knoxville Utils. Bd.,* 667 S.W.2d 91, 95 (Tenn.Ct.App.1983); *Pac. Nw. Bell Tel. Co. v. Port of Seattle,* 80 Wash.2d 59, 491 P.2d 1037, 1040 (1972); *Smith v. City of Morgantown,* 169 W.Va. 668, 289 S.E.2d 223, 224–25 (1982). *But see Lubin v. Iowa City,* 257 Iowa 383, 131 N.W.2d 765, 770 (1964); *Bridgeman–Russell Co. v. City of Duluth,* 158 Minn. 509, 197 N.W. 971, 972 (1924).[14]

In terms of the majority rule, *John T. Arnold Associates, Inc.* and *Pacific Northwest Bell Telephone Co.* are especially noteworthy because those courts applied the Restatement factors, as Maryland would, in deciding that the maintenance of public water mains is not an abnormally dangerous activity. *See John T. Arnold Assocs., Inc.,* 615 P.2d at 825–26; *Pac. Nw. Bell Tel. Co.,* 491 P.2d at 1039–40. As to the minority rule, *Bridgeman–Russell Co.* likely has limited precedential value in light of the Supreme Court of Minnesota's decision in *Quigley v. Village of Hibbing,* 268 Minn. 541, 129 N.W.2d 765 (1964). In *Village of Hibbing,* the court restricted the

holding in *Bridgeman–Russell Co.* to the unique facts of that case, noting that the water main there was so close to a reservoir that a breach in the main was tantamount to a breach in the reservoir. *Id.* at 767. That situation is not the case here.

All in all, there is good reason to conclude that the Court of Appeals of Maryland would join the majority of state courts that have already addressed this issue. Although there may be certain rare situations in which a burst water main may warrant the application of strict liability, *see, e.g., Bridgeman–Russell Co.,* 197 N.W. at 972, the allegations in the complaints here do not suggest that such uncommon factors were present. As defined by the Restatement, the maintenance of public water mains is not an abnormally dangerous activity and therefore not subject to strict liability. Accordingly, Count One in all complaints will be dismissed.

## C. Count Two: Negligence

■■■ In the alternative, Plaintiffs argue that WSSC was negligent in its oversight of the burst water main. To prove negligence under Maryland law, a plaintiff must show that: (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *Valentine v. On Target, Inc.,* 353 Md. 544, 549, 727 A.2d 947 (1999). WSSC asserts that the allegations in the complaints fail to show the last element, that WSSC's action (or inaction) proximately caused Plaintiffs' injuries.

**14.** At least two other state courts have applied strict liability to situations involving broken water mains; however, those cases are not enlightening here. In *Smith v. Town of Logansport,* 395 So.2d 888 (La.Ct.App.1981), the court applied a state statute in finding the municipality strictly liable for its faulty maintenance of a water main, and in *Bierman v. City of New York,* 60 Misc.2d 497, 302 N.Y.S.2d 696 (Civ.Ct.1969), the lower court was considering a small claims suit.

(ECF No. 13–1, at 7–10; ECF No. 22–1, at 7–11; ECF No. 27–1, at 7–10). "To be a proximate cause for an injury, the negligence must be (1) a cause in fact, and (2) a legally cognizable cause." *Pittway Corp. v. Collins,* 409 Md. 218, 243, 973 A.2d 771 (2009) (internal quotations omitted). WSSC takes issue with both aspects of proximate cause.

■ Causation-in-fact refers to the requirement that the defendant's conduct actually produce an injury. *Id.* at 244, 973 A.2d 771. Depending on the situation, there are two tests for determining if causation-in-fact exists: the "but for" test and the "substantial factor" test. *Id.* "The 'but for' test applies in cases where only one negligent act is at issue . . . ." *Id.* "When two or more independent negligent acts bring about an injury, . . . the substantial factor test controls. Causation-in-fact may be found if it is 'more likely than not' that the defendant's conduct was a substantial factor in producing the plaintiff's injuries." *Id.*

■ Here, WSSC argues that the "but for" test applies, but only as to the *County's* alleged negligence. As WSSC puts it, "[t]he source of [the] water is irrelevant." (ECF No. 13–1, at 10; ECF No. 22–1, at 10; ECF No. 27–1, at 10). "But for the storm sewage system failure," WSSC contends, water would never have reached the Parkway and frozen. (*Id.*). WSSC utterly misses the point, as the source of water is clearly relevant. Indeed, but for the breach in the water main, there would not have been any runaway water to freeze in the first place. In any event, as Plaintiffs correctly note, the "but for" test is not the appropriate analysis.

There are multiple alleged negligent acts that potentially contributed to the vehicle accident that killed Joseph Quigley and injured Ms. Ochoa and Ms. Barbosa. Accordingly, the "substantial factor" test is the appropriate test to apply. Applied in this case, Plaintiffs have alleged sufficient facts to suggest that the breach in the water main maintained by WSSC, especially when coupled with the allegation that WSSC actually *increased* the water pressure in response to the breach, was more likely than not a contributing factor to the ultimate harms suffered by Plaintiffs.

■ The second requirement to show proximate cause—that the negligence is a legally cognizable cause—requires the court "to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Pittway Corp.,* 409 Md. at 245, 973 A.2d 771. "The question of legal causation most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct." *Id.* at 246, 973 A.2d 771. Here, WSSC argues that, assuming that the burst water main was a cause-in-fact of the injuries, it was not foreseeable that the subsequent events would coalesce and result in dangerous road conditions. (ECF No. 13–1, at 10; ECF No. 22–1, at 10–11; ECF No. 27–1, at 10). As Plaintiffs correctly surmise (ECF No. 19, at 13; ECF No. 25–1, at 13; ECF No. 34, at 18), what WSSC is really arguing is that the County's malfunctioning storm drain was a superseding event that cut off WSSC's legal liability for the damages caused.[15]

---

**15.** The County contests the proprietorship of the storm drain, stating that the United States maintained the one at issue. (ECF No. 18, at 1–2). Because this is a motion to dismiss, however, the allegations in the complaints must be taken as true. *Albright,* 510 U.S. at 268, 114 S.Ct. 807. To the extent the County's view of the facts has merit, this issue is best resolved after discovery on summary judgment.

▮▮▮ "When multiple negligent acts or omissions are deemed a cause-in-fact of a plaintiff's injuries, the foreseeability analysis must involve an inquiry into whether a negligent defendant is relieved from liability by intervening negligent acts or omissions." *Pittway Corp.*, 409 Md. at 247, 973 A.2d 771. "Liability is avoided only if the intervening negligent act or omission at issue is considered a superseding cause of the harm to the plaintiffs." *Id.* at 248, 973 A.2d 771. To determine when an intervening negligent act evolves to the level of a superseding cause, the Court of Appeals of Maryland looks to sections 442 and 447 of the Restatement, summarizing those provisions as follows: "[A] superseding cause arises primarily when 'unusual' and 'extraordinary' independent intervening negligent acts occur that could not have been anticipated by the original tortfeasor." *Id.* at 248–49, 973 A.2d 771. Furthermore, in terms of foreseeability, "*both* the foreseeability of the harm suffered by the plaintiffs as well as the foreseeability of intervening acts" are considered when analyzing superseding causation. *Id.* at 253, 973 A.2d 771.

▮▮▮ Here, WSSC has not offered any basis for deciding as a matter of law that the breach in the storm drain was so "unusual" or "extraordinary" an occurrence so as to absolve WSSC of any liability. While the coincidence of a negligently maintained storm drain near a burst water main could be considered highly unusual, the reverse can just as easily be concluded. Indeed, it is hardly a stretch of the imagination to think that the nearby storm drain might have been similarly breached as a result of the cold weather conditions here or that it might generally have been neglected. Accordingly, WSSC's motion must be denied as to this count. *See id.* ("It is well established that, 'unless the facts admit of but one inference . . . the determination of proximate cause . . . is for the jury.'" (quoting *Caroline v. Reicher*, 269 Md. 125, 133, 304 A.2d 831 (1973))).[16]

## IV. Conclusion

For the foregoing reasons, the motions to dismiss filed by Defendant Washington Suburban Sanitary Commission will be granted in part and denied in part. A separate order will follow.

## MEMORANDUM OPINION

Presently pending and ready for review in this consolidated tort action is the "motion for reconsideration and/or in the alternative motion to entertain suit even though required notice not given pursuant to Md. Code Ann. Cts. & Jud. Proc. § 5–304(d)" filed by Plaintiff Pollyana Barbosa. (ECF No. 56). The issues have been fully

---

16. Although Maryland courts have not yet faced a set of facts similar to the present one, other jurisdictions have found municipalities and their agents negligent for failing to maintain properly a water main where water escapes and freezes on a road causing vehicular accidents. *See, e.g., Stride v. Portland Water Dist.*, 133 Me. 516, 178 A. 124 (Mass.1935) (upholding jury verdict against defendant where plaintiff-driver drove over ice caused by a break in water mains and injured himself and his passenger wife); *Wagner v. Vill. of Waterbury*, 109 Vt. 368, 196 A. 745 (1938) (village held liable for wrongful death of boy hit by a car that skidded on ice that formed when water from a water main leaked onto the street); *City of Richmond v. Best*, 180 Va. 429, 23 S.E.2d 224 (1942) (city held liable for personal injuries sustained by car driver when his car skidded on ice that formed from water coming from broken water main); *see also Draskowich v. City of Kan. City*, 242 Kan. 734, 750 P.2d 411 (1988) (city found negligent for failing to warn drivers about ice caused by leaking water main); *Brown v. Oakland Cnty.*, 279 Mich. 55, 271 N.W. 550 (1937) (county's negligence was uncontroverted in wrongful death suit where decedent-driver hit an "ice barrier" formed across a road from a leaking water main).

briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion for reconsideration will be denied.

## I. Background [1]

On November 10, 2011, Ms. Barbosa filed this action, alleging that Defendants were negligently or strictly liable for injuries she sustained after an automobile accident that occurred on the Clara Barton Parkway ("the Parkway"). Ms. Barbosa alleged that during the overnight hours of January 19, 2009, a water main maintained by Defendant Washington Suburban Sanitary Commission ("WSSC") burst, releasing water that traveled through a faulty storm drain onto the Parkway and froze into ice. Ms. Barbosa further alleges that early that morning, Defendant Marcelo Pepe, in whose car Ms. Barbosa and Plaintiff Adriana Ochoa were passengers, was driving on the Parkway when he hit the ice, lost control, and collided with decedent Joseph Quigley's car. According to her complaint, Ms. Barbosa was ejected from Mr. Pepe's vehicle and landed on top of its burning exhaust system, all of which caused injuries and first-, second-, and third-degree burns.

On April 2, 2012, Ms. Barbosa filed the present motion (ECF No. 56), which seeks reconsideration of the court's March 22, 2012, memorandum opinion and order dismissing her claims against WSSC (ECF Nos. 50, 51). Specifically, the motion seeks reconsideration of the dismissal of

Count Two of the complaint, the negligence claim. WSSC filed an opposition on April 30, 2012. (ECF No. 65). On May 16, 2012, Ms. Barbosa replied. (ECF No. 66).[2]

## II. Motion for Reconsideration

Although Ms. Barbosa requests reconsideration pursuant to Federal Rule of Civil Procedure 59(e), her motion is more appropriately analyzed under Rule 54. Rule 59(e) governs where there has been a final "judgment." Fed.R.Civ.P. 59(e); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir.1991) ("Rule 59(e) is equally applicable only to a final judgment."). The March 22, 2012, order was not a final "judgment," however. *See* Fed.R.Civ.P. 54(b) ("[A] ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Thus, Ms. Barbosa's motion for reconsideration is better construed as a motion for reconsideration of an interlocutory order under Rule 54(b). *See Fayetteville Investors*, 936 F.2d at 1469–70.

The precise standard governing a motion for reconsideration of an interlocutory order is unclear. *Id.* at 1472. While the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, *see Am. Canoe Ass'n v.*

---

1. Three cases are consolidated in this action: *Quigley v. United States*, No. DKC 11–3223; *Ochoa v. United States*, No. DKC 11–3224; and *Barbosa v. United States*, No. DKC 11–3225.

2. In her reply, Ms. Barbosa objects to the untimely filing of WSSC's opposition. (*Id.* at 1). She does not, however, explain how she is prejudiced by this brief delay. Therefore, WSSC's opposition will be considered in re-

solving Ms. Barbosa's motion. *Cf. H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D.Md.2000) (denying a motion to strike an opposition because the moving party "has not shown that he was harmed in any way by the seven-day delay" in the filing of the opposition). Even if WSSC's opposition were not considered, however, Ms. Barbosa's motion would still be denied.

*Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir.2003), courts frequently look to these standards for guidance in considering such motions, *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559, 565–66 (M.D.N.C.2005).

> Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided. Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions. Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice.

*Id.* (citations omitted); *see also Beyond Sys., Inc. v. Kraft Foods, Inc.*, No. PJM–08–409, 2010 WL 3059344, at *1–2 (D.Md. Aug. 4, 2010) (applying this three-part test when evaluating a motion for reconsideration under Rule 54(b)). A motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court. *Beyond Sys., Inc.*, 2010 WL 3059344, at *2.

Ms. Barbosa advances essentially three arguments for reconsideration, none of which compels revision of the court's prior decision. First, she argues that the court relied in part on an erroneous fact in reaching its decision that her claims against WSSC fail for lack of notice under the Local Government Tort Claims Act ("LGTCA"). She points out that in discussing whether good cause existed for waiving the LGTCA's notice requirement, the court questioned why Ms. Ochoa was able to submit timely notice to WSSC on May 19, 2009, while Ms. Barbosa was not. (*See* ECF No. 56, at 3–4). As Ms. Barbo-

sa correctly observes, although Ms. Ochoa's notice letter to WSSC was dated May 19, 2009, the United States Postal Service confirmation of delivery clearly indicated that WSSC did not actually receive the notice letter until July 10, 2009. (ECF No. 34–2). This error, however, was not material to the court's resolution of this issue.

The LGTCA requires that notice be provided to the allegedly offending government entity "within 180 days after the injury." Md.Code Ann., Cts. & Jud. Proc. § 5–304(b). Here, "the 180th day after the accident was July 19, 2009." (ECF No. 50, at 14 n. 8). Thus, even if it is true that Ms. Ochoa did not submit notice to WSSC until July 10, 2009, she still submitted notice prior to the 180–day deadline imposed by the LGTCA, much like Mr. Quigley's estate did on July 9, 2009. Because Ms. Ochoa's notice was timely, the exact date of the notice is irrelevant. All in all, Ms. Barbosa does not answer the overriding question of "why her co-plaintiffs' attorneys could respond in a timely manner to the May 5, 2009, police report, but her attorney could not." (*Id.* at 14). The reasoning with respect to this issue remains sound.

Second, Ms. Barbosa re-argues that she substantially complied with the LGTCA notice requirement. (ECF No. 56, at 4–6). She does not, however, proffer any new evidence that was previously unavailable, advance any intervening change in controlling law, or identify any clear error that would warrant revising the court's earlier conclusion that she failed to comply substantially with the LGTCA. Instead, Ms. Barbosa merely reiterates arguments that were previously rejected by contending that WSSC was on actual notice of the underlying accident giving rise to her claims. As the court already explained in its prior opinion, however, "substantial

compliance requires more than a mere lack of prejudice to the State." (ECF No. 50, at 10 (quoting *Johnson v. Md. State Police*, 331 Md. 285, 291–92, 628 A.2d 162 (1993))). Indeed, "[i]t is required by the law that [*Ms. Barbosa* ] *or her agent* must take an affirmative step towards preserving her rights under the [LGTCA]," and, here, she has alleged no facts suggesting that she did so. Therefore, Ms. Barbosa's motion for reconsideration on this ground is denied. *See Beyond Sys., Inc.*, 2010 WL 3059344, at *2.

Finally, Ms. Barbosa re-argues that good cause can be found for waiving the LGTCA notice requirement. (ECF No. 56, at 6–8). As with her previous argument, however, she does not submit any previously-unavailable new evidence, point to any intervening change in relevant law, or pinpoint any clear error that would permit revisiting the court's holding that no good cause exists to absolve Ms. Barbosa's counsel of their delinquency. Instead, Ms. Barbosa only focuses on her current counsel, Stephen Markey, and attempts to explain why his delay in submitting notice to WSSC should be excused.[3] While Mr. Markey attempts to address the court's skepticism that he was diligent in preserving all of his client's rights via his own personal affidavit, which details his efforts in pursuing Ms. Barbosa's claims (*see* ECF No. 56–2, at 1–4), nothing in that affidavit explains why he could not have presented this evidence at the time the original motion to dismiss was considered. Ms. Barbosa's argument for reconsideration on this ground is thus unavailing.

Even if the court were to entertain Mr. Markey's explanation for his delay in complying with notice to WSSC on behalf of his client,[4] Ms. Barbosa still fails to untangle the more pressing question of why her former attorney, Michael Avery, did not comply with the LGTCA notice requirement.[5] At best, Ms. Barbosa attempts to justify Mr. Avery's actions (or lack thereof) by stating that "no claimant received the final reconstruction report from the National Park Service until after June 3, 2009 when a copy was mailed to counsel for Quigley, it is unlikely Mr. Avery was aware of the water main break." (ECF No. 56, at 6 n. 1). Besides inexplicably being brought to the court's attention now, this new information does nothing to assuage the concerns expressed in the court's prior opinion. If this reconstruction report contains evidence that a water main break was involved in causing the accident, it was evidently available to the parties over a month before notice to WSSC was due. Thus, if anything, this fact actually calls Mr. Avery's diligence even more into question. Ms. Barbosa simply does not provide any satisfactory explanation why Mr. Avery could not comply with the requirement when other plaintiffs' counsel could.

---

**3.** In its March 22, 2012, memorandum opinion, the court remarked: "It is not clear that Mr. Markey himself was diligent either. Upon taking over Ms. Barbosa's case on July 9, 2009—ten days before the LGTCA notice period expired—one would expect that a 'reasonably prudent person' would act quickly to preserve his client's rights." (ECF No. 50, at 15 n. 10) (internal citations omitted).

**4.** Mr. Markey did not submit notice until nearly three months after he was retained. By contrast, Jeffrey Raden, counsel for Ms. Ochoa, required roughly ten days to do the same. (*See* ECF No. 56–1).

**5.** Indeed, Ms. Barbosa even blames Mr. Avery in part for Mr. Markey's delay in submitting notice. She explains that Mr. Avery did not inform her of the possibility that a water main break was the source of the ice that caused the accident, and, thus, she could not inform Mr. Markey of the possibility. (ECF No. 56, at 6–8).

In sum, Ms. Barbosa admits that she was represented by Mr. Avery during a key period of the timeline of relevant events in this case. She is bound by his actions and failures to act on her behalf. *See In re Fisherman's Wharf Fillet, Inc.*, 83 F.Supp.2d 651, 660 (E.D.Va.1999) ("[O]ne cannot voluntarily choose an attorney and then avoid the consequences of the attorney's acts or omissions." (citing *In re Walters*, 868 F.2d 665, 668–69 (4th Cir. 1989))). Accordingly, even if the court were to reconsider the question of good cause, good cause to waive the LGTCA notice requirement as to WSSC is absent in this case.

## III. Conclusion

For the foregoing reasons, the motion to reconsider filed by Plaintiff Pollyana Barbosa will be denied. A separate order will follow.